541 S.E.2d 526

Catherine ANDERSON, Respondent/Petitioner,

v.

BAPTIST MEDICAL CENTER and Palmetto Hospital Trust Fund, Petitioners/Respondents.

No. 25237.

Supreme Court of South Carolina.

Heard Nov. 15, 2000.

Decided Jan. 16, 2001.

488

Vernon F. Dunbar, Turner Padget, Graham & Laney, Columbia, for petitioners/respondents.

Frank A. Barton, West Columbia, for respondent/petitioner.

### ON WRIT OF CERTIORARI TO
### THE COURT OF APPEALS

BURNETT, Justice.

This case involves cross-appeals from an opinion of the Court of Appeals affirming in part, reversing in part, and remanding an order of the Workers' Compensation Commission. We affirm.

### FACTS

The instant case concerns a September 1, 1995 fall at Baptist Medical Center (BMC)[1] where Respondent/Petitioner Catherine Anderson (Anderson) was employed. The case is factually complicated by Anderson's involvement in two previous accidents: a 1988 on-the-job injury and a 1993 automobile accident.

In 1988, while working in a clerical position at Providence Hospital, Anderson injured her lower back and legs. She was treated conservatively by Dr. James Bethea, the carrier-approved orthopedic surgeon, for four years. Anderson left Providence Hospital and took a similar position with BMC in December of 1989. During this time period, Anderson received counseling and began taking anti-depressants. After four years of continued back pain, Anderson eventually sought

---

1. We refer to Petitioners/Respondents collectively as BMC.

treatment from Dr. Gal Margalit, who referred her to Dr. John Williams, a neurosurgeon in Augusta, Georgia. In July of 1992, Dr. Williams performed surgery on Anderson for a herniated disk.

In 1993, Anderson was involved in a serious, non-work-related automobile accident in which she injured her neck, head, and teeth, and aggravated prior back, shoulder, and knee injuries. Dr. Margalit referred Anderson to Dr. Robert Peele, who performed surgery on June 10, 1995 on Anderson's left knee related to the automobile accident. Anderson also began seeing Dr. Sale Estefano, a psychiatrist, after her automobile accident. Dr. Estefano diagnosed Anderson with post-traumatic stress disorder with severe depression, panic disorder without agoraphobia, and adjustment reaction with depressed mood.

After a hearing on June 15, 1995, Anderson was awarded workers' compensation benefits for the 1988 accident at Providence Hospital with a 42% impairment to her back. At the time of this hearing, she was out of work due to the recent knee surgery related to her automobile accident. However, immediately prior to the surgery, she had been working approximately thirty hours per week. Her claim for psychological injuries was not addressed by the hearing commissioner, and an appeal was not perfected.

After Anderson recovered from her knee surgery, she resumed her work schedule of approximately thirty hours per week. On September 1, 1995, less than three months after her knee surgery and workers' compensation hearing, Anderson fell at work, precipitating the instant case. Anderson claimed injury to her "left knee, right knee, left arm and shoulder, right hand and arm, back, neck, psychological injury, and all other areas of the body directly/indirectly effected [sic]." BMC admitted injury to Anderson's left knee only. The Hearing Commissioner found Anderson sustained an injury by accident to her left knee only and "failed to prove by a preponderance of the evidence that she sustained an aggravation of her pre-existing right knee, back, and right and left arm injuries." The Commissioner also found Anderson "failed to prove that she sustained a mental injury or an aggravation of a pre-existing mental injury/condition as a

result of her admitted accidental injury." Furthermore, the Commissioner rejected Anderson's argument that fringe benefits should be included in the average weekly wage calculation. The Full Commission affirmed and adopted the Hearing Commissioner's order in its entirety. The Circuit Court also affirmed. In an unpublished opinion, the Court of Appeals affirmed on all issues except Anderson's claim of psychological injury, which it reversed and remanded. *Anderson v. Baptist Medical Center and Palmetto Hospital Trust Fund*, Op. No. 99–UP–335 (S.C.Ct.App. filed June 1, 1999). The parties filed cross-appeals.

## ISSUES

I. Did the Court of Appeals err in reversing the Commission's finding Anderson did not aggravate her pre-existing psychological condition when she fell?

II. Did the Court of Appeals err in holding no statement of maximum medical improvement was necessary regarding Anderson's left shoulder and back?

III. Should fringe benefits be included in calculating average weekly wage?

## DISCUSSION

I. Psychological Injury

BMC argues the Court of Appeals erred in reversing the Commission's finding Anderson did not aggravate her pre-existing psychological condition as a result of the September 1, 1995 fall. We disagree.

 The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 466 S.E.2d 357 (1996). Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 454 S.E.2d 320 (1995). Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the

Commission are conclusive. *Glover v. Columbia Hospital of Richland County,* 236 S.C. 410, 114 S.E.2d 565 (1960).

■ Mental injuries are compensable if they are induced either by physical injury or by unusual or extraordinary conditions of employment. *Getsinger v. Owens–Corning Fiberglas Corp.,* 335 S.C. 77, 81, 515 S.E.2d 104, 106 (Ct.App. 1999) (*citing Kennedy v. Williamsburg County,* 242 S.C. 477, 131 S.E.2d 512 (1963) and *Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991)). The right of a claimant to compensation for aggravation of a pre-existing condition arises only where there is a dormant condition which has produced no disability but which becomes disabling by reason of the aggravating injury. *Hines v. Pacific Mills,* 214 S.C. 125, 51 S.E.2d 383 (1949). Aggravation of pre-existing psychiatric problems is compensable if that aggravation is caused by a work-related physical injury. *Toler v. Black & Decker,* 134 N.C.App. 695, 518 S.E.2d 547, 551 (1999); *see Adams v. Texfi Industries,* 320 S.C. 213, 217, 464 S.E.2d 109, 112 (1995) (decisions of North Carolina courts interpreting that state's workers' compensation statute are entitled to weight because the South Carolina statute was fashioned after North Carolina's).

■ At the hearing on BMC's stop payment motion, Anderson testified her depression had worsened since her fall at BMC and her dosage of Prozac had been doubled. Anderson's husband corroborated her testimony. Anderson's treating psychiatrist, Dr. Sale Estefano, stated in a letter dated May 2, 1996 that he was treating Anderson for her fall of September 1, 1995, which "aggravated her pre-existing psychiatric diagnosis." These contentions are, if not supported, at least not contradicted by the notes of Dr. Robert Peele, the carrier-approved treating physician. Dr. Peele noted on September 25, 1995 Anderson "will see Dr. Estefano for depression. Certainly another factor here." On November 6, 1995, Dr. Peele stated that Anderson could return to work from his perspective, but since Dr. Estefano had her out of work for psychological problems, "that will be Dr. Estefano's call." On December 26, 1995, Dr. Peele noted Anderson had a "difficult combination of problems orthopaedically and psychologically."

The Court of Appeals correctly reversed the Commission's finding Anderson's psychological condition was not aggravated by her September 1, 1995 fall. Although Anderson was receiving treatment for depression prior to this accident, the only substantial evidence in the record clearly shows her condition was aggravated by the work-related fall.

## II. Maximum Medical Improvement

Anderson argues the Court of Appeals erred in holding no statement of maximum medical improvement (MMI) was necessary with regard to injuries to Anderson's left shoulder and back.[2] We disagree.

Barbara Griffin, BMC's workers' compensation nurse, testified that Dr. Peele was authorized to treat Anderson's left shoulder, knee, and back as a consequence of the September 1, 1995 fall. However, BMC only admitted injury to Anderson's left knee. Dr. Peele's letter attached to BMC's stop payment application certified he believed Anderson had "most probably reached maximum medical improvement relative to her left knee" and gave her an 11% impairment rating to her left lower extremity. He made no mention of Anderson's left shoulder or back.

Anderson argues the Commission erred in determining she reached MMI with regard to injuries to her left shoulder and back. However, the Commission did not find Anderson reached MMI as to those injuries. Rather, it found Anderson "sustained an accidental injury only to her left knee" and "failed to prove by a preponderance of the evidence that she sustained an aggravation of her pre-existing right knee, back, and right and left arm injuries."

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 466 S.E.2d 357 (1996). The final determination of witness credibil-

---

2. At the time of the hearing, Regulation 67–507 required an employer to attach "a medical certificate of the authorized health care provider stating the claimant has reached maximum medical improvement" to its application to terminate compensation. S.C.Code Ann.Reg. 67–507(3)(a), repealed by State Register Vol. 21, Issue No. 6, Part 2, effective June 27, 1997.

ity and the weight to be accorded evidence is reserved to the Commission and it is not the task of this Court to weigh the evidence as found by the Commission. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999).

The Court of Appeals correctly affirmed because substantial evidence supports the Commission's decision in this case.

III. Average Weekly Wage Calculation

Anderson argues the $95.02 per week BMC paid for her medical, disability, and life insurance should be included in the calculation of her average weekly wage. We disagree.

This is a question of statutory construction. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 229, 417 S.E.2d 592, 593 (1992). Construction of a statute by an agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons. *Glover by Cauthen v. Suitt Constr. Co.,* 318 S.C. 465, 469, 458 S.E.2d 535, 537 (1995). The Workers' Compensation Act is entitled to a liberal construction in furtherance of the beneficial purposes for which it was designed. *Carter v. Penney Tire & Recapping Co.,* 261 S.C. 341, 349, 200 S.E.2d 64, 67 (1973).

The Act defines "average weekly wage" to mean "the earnings of the injured employee in the employment in which he was working at the time of the injury...." S.C.Code Ann. § 42–1–40 (1985 & Supp.1999). The definition goes on to state: "Whenever allowances of any character made to an employee in lieu of wages are a specified part of a wage contract they are deemed a part of his earnings." *Id.* Thus, before an allowance will be included in the average weekly wage calculation, it must (1) be made in lieu of wages, and (2) be a specified part of a wage contract.

This Court has not had occasion to address the definition of "average weekly wage." The Court of Appeals has held that compensation should be determined based on the employee's net taxable income. Thus, the average weekly wage should be calculated based only on "the actual sum paid to the employee as his wages, not the totality of payments including reimbursements." *Stephen v. Avins Const. Co.,* 324 S.C. 334, 347, 478 S.E.2d 74, 81 (Ct.App.1996). The Court of Appeals has also held that mileage deductions taken by the employee on his federal income tax form were not includable in the employee's income for purposes of computing workers' compensation benefits. *Wright v. Wright,* 306 S.C. 331, 334, 411 S.E.2d 829, 830–31 (Ct.App.1991). Relying primarily on *Stephen,* the Court of Appeals held in this case that fringe benefits should not be considered in calculating the average weekly wage.

The Court of Appeals' holding is consistent with the majority view. *See* Arthur Larson & Lex. K. Larson, *Larson's Workers' Compensation Law,* § 93.01[2][b] (2000). In the leading case of *Morrison–Knudsen Constr. Co. v. Director, Office of Workers' Comp. Programs,* 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), the United States Supreme Court held that employer contributions to union trust funds for health and welfare, pensions, and training are not "wages" for the purpose of calculating benefits under the District of Columbia Act.[3] However, the definition at issue in *Morrison–Knudsen* was very different from that in our Act.

Seven other states have statutes containing the language at issue in this case.[4] Of the seven, four have addressed issues similar to the one before us. In *Kirk v. State of North Carolina Dep't of Correction,* 121 N.C.App. 129, 465 S.E.2d 301 (1995), the North Carolina Court of Appeals, whose inter-

---

**3.** Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 902(13) (1978). The 1984 amendment to this section defined wages with reference to the Internal Revenue Code and specifically excluded fringe benefits from the definition. 33 U.S.C. § 902(13) (1986).

**4.** These are Alabama, Indiana, Mississippi, North Carolina, South Dakota, Tennessee, and Virginia. *See* Ala.Code § 25–5–1(6) (1992); Ind. Code § 22–3–6–1(d)(3) (1997 & Supp.2000); Miss.Code Ann. § 71–3–31 (1972); N.C.Gen.Stat. § 97–2(5) (1999); S.D.Codified Laws § 62–1–1(6) (1993 & Supp.2000); Tenn.Code Ann. § 50–6–102(2)(D) (1999); Va.Code Ann. § 65.2–101(2) (1995 & Supp.2000).

pretation of workers' compensation law is given great weight in this state, held the employer's contributions to the employee's health insurance plan should not be included in the employee's average weekly wage because there was no evidence health insurance contributions were made "in lieu of wages." The Supreme Court of Tennessee reached the same result, noting any broadening of the definition of average weekly wage should come from the legislature, not the courts. *Pollard v. Knox County*, 886 S.W.2d 759 (Tenn.1994). In *Gajan v. Bradlick Co.*, 4 Va.App. 213, 355 S.E.2d 899, 901 (1987), the Virginia court held that even where insurance was specifically bargained for as part of the employment contract, payment of premiums was still not "in lieu of wages."

The only state with a similar statute to reach a different result is Alabama, where the supreme court held in *Ex parte Murray*, 490 So.2d 1238 (Ala.1986), that fringe benefits such as insurance should be included in the calculation of the claimant's average weekly wage. The *Murray* court noted, however, that it was undisputed that fringe benefits in that case were not provided gratuitously to the employee and were a specified part of the wage contract. *Id.* at 1240. The Alabama Workers' Compensation Act, amended in 1992, now defines "wages" to include fringe benefits when the employer does not continue those benefits during the period for which compensation is paid. Ala.Code § 25–5–1(6) (1992).

 We agree with the Court of Appeals and those courts holding fringe benefits should not be included in the average weekly wage. Anderson has produced no evidence that BMC pays her insurance premiums "in lieu of wages" or that they are "a specified part of [her] wage contract," as required by the statute. She relies entirely on generalized statements about the importance of insurance benefits in today's job market. Furthermore, insurance premiums are not "wages" or "earnings" under the plain and ordinary meaning of the terms. For example, Anderson does not claim to include the company-paid insurance premiums as income on her tax returns. Finally, including fringe benefits such as insurance in the calculation of average weekly wage would dramatically alter the practice in this state. We defer to the Commission's longstanding interpretation of the Workers' Compensation Act in this regard. *See Glover by Cauthen v. Suitt Constr. Co.*,

318 S.C. 465, 469, 458 S.E.2d 535, 537 (1995) (construction of a statute by an agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons). We agree with the Virginia Court of Appeals that even a liberal construction of the Workers' Compensation Act "does not authorize the amendment, alteration or extension of its provisions beyond its obvious meaning." *Gajan*, 355 S.E.2d at 902. Any such significant change in the definition of average weekly wage is the prerogative of the legislature.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.