593 S.E.2d 491

Ted **FRAME**, Claimant/Employee, Respondent,

v.

**RESORT SERVICES INCORPORATED**, Employer, and Fireman's Fund Insurance Company, Carrier, Appellants.

No. 3732.

Court of Appeals of South Carolina.

Heard Jan. 14, 2004.

Decided Feb. 2, 2004.

522

Robert W. Achurch, III and Mary Bass Lohr, of Beaufort, for Appellants.

Coleman Hookaylo, Jr., of Hilton Head Island, for Respondent.

ANDERSON, J.:

Resort Services Incorporated (RSI), employer, and Fireman's Fund Insurance Company, carrier, appeal an order by the circuit court which adopted the findings of the Workers' Compensation Commission and granted Ted Frame, employee, full benefits for mental illness under the South Carolina Workers' Compensation Act. We reverse and remand.

## *FACTS/PROCEDURAL BACKGROUND*

Ted Frame began his employment with RSI, a commercial laundry business, as a route sales driver in March 1985. After establishing himself as a "jack of all trades" and an "excellent employee," Frame was promoted to route sales manager sometime between 1991 and 1993 and again to production manager in 1997. By the time he ended his employment with RSI, a family owned business run by the five sons of founder Jerry Reeves, Frame was known within the company as the sixth Reeves brother, having many of the same responsibilities and ostensibly the authority of a co-owner.

Both Frame and RSI agree that he had a very difficult and stress inducing job throughout his employment with RSI. As a route sales driver, he would often work up to fourteen hours a day, and it was not uncommon to put in sixty to seventy hours a week. In both the route sales manager and production manager positions, his responsibilities were increased and the amount of time his job required remained around sixty to seventy-five hours a week, depending on the season, often working weekends. Furthermore, his level of job-related stress was aggravated by what he perceived to be management's continual incompetence, violations of law (Department of Transportation and environmental regulations), conflicting orders, disregard of proper chain of command, overt racism [1], and sexual misconduct on the part of some of his five bosses. Frame professed that many of the circumstances which eventually led to his heightened level of job-related stress, particularly racist remarks by management, reporting and receiving conflicting orders from multiple bosses and having to rush between several different areas of the business, had been present for about five years before the date he left the employ of the company.

Throughout his fifteen years of employment, especially in the last five years, Frame had feelings of frustration, helplessness and outrage at the practices of his supervisors. He testified to several instances where he fired employees for

---

**1.** Frame, a Caucasian, was often troubled by the dishonorable treatment African–American employees under his charge received from upper management, exacerbated by comments by certain members of the Reeves family.

violations of the company's drug and alcohol policy, which he was charged to enforce, only to have the Reeves brothers rehire them a month later. There were occasions when truck maintenance, hauling practices, and the plant's compliance with environmental regulations were responded to with perceived apathy by the Reeves brothers. Frame believed this rose to the level of a violation of law. His dissatisfaction with his job was exacerbated throughout his employment by feelings that its demands were destroying his family life.

On September 9, 1999, an outside vendor of paper goods arrived at RSI with a delivery. Two boxes of paper towels, damaged during delivery, were deemed below the quality standards of the company and were removed from the bill. The driver of the truck, expressing his intention of throwing the products away, instead gave the products to the employees of RSI. One employee, driver Kevin Moore, an outstanding employee by RSI's own testimony, took some of the towels home with him at the end of his shift.

Frame arrived to work the following morning to find Michelle Johnson, a purchasing agent for the company and Frame's subordinate, loudly accusing Moore of being a thief. Frame attempted to explain to Johnson the situation, namely that the paper products were given free of charge from the vendor, but Johnson continued to accuse Moore and seek action from Frame. When Frame became annoyed by Johnson's continual finger pointing, he inquired into the cost of the paper towels had the company been charged by the vendor, wrote the company a check for that amount (about thirty-five dollars) and handed it to Johnson.

The Reeves brothers were conducting a family business meeting on the day in question. Johnson, alleged paramour of Michael Reeves, quickly approached him as he left the meeting and told him of the events of the day.[2] Michael Reeves, siding with his alleged girlfriend, sought out Frame and explained to him that it was a violation of company policy to allow an employee to receive free items. According to Frame,

---

2. Although Frame asserted that the adulterous relationship between Michael Reeves and Michelle Johnson was common knowledge within the company, he offered no proof at the hearing and admitted to never actually witnessing intimate sexual relations.

Michael Reeves expanded on the policy by adding, "[Kevin Moore] is a thief and liar. [A]ll black people are thieves and liars and . . . you've got to watch out for it."

Over Frame's assertions that Moore was innocent of any wrongdoing, Michael Reeves continued to state his position on the alleged towel theft until Frame suffered a complete mental breakdown. In his own words, "I think really what topped the notch was with Michelle and the paper products that said that Kevin stole and then Michael told me that blacks were all thieves and liars. I think that's what really snapped." Frame told his boss to leave Moore alone, placed his pager and phone down, went out to his truck and started crying. He never returned to work in his previous capacity.

After expressing to family and friends his breakdown and an onslaught of suicidal tendencies following the above incident, Frame was examined by a psychologist and a psychiatrist. The psychiatrist and psychologist agree: (1) that Frame suffers from a bipolar type of psychosis; (2) on the day in question he experienced what is known as a "decompensation" (a mental breakdown); (3) there is a certain genetic predisposition to this kind of psychosis; (4) this "decompensation" was the result of job-related stress; and (5) it was in no way certain that Frame would experience such a mental collapse regardless of exterior stimuli (i.e., his job). According to the psychiatrist and psychologist, Frame is not currently capable of full-time work.

Frame claimed entitlement to benefits under the Workers' Compensation Act. A hearing before a single commissioner resulted in an order granting Frame full benefits. The order of the single commissioner reads:

1. The Claimant was predisposed to mental illness, although it is unclear whether the predisposition was as a result of genetics or something else. The basis of the predisposition is not relevant.

2. The Claimant's work stress was a contributing factor to the decompensation and was the major contributing factor.

3. Particular stressors in the workplace included: answering to "five bosses"; the constant anxiety resulting from escalating pressure associated with being on call. Other

examples were trying to cut costs without cooperation, insufficient fire extinguishers to put out fires in the plant, conflict with DOT standards or regulations, lack of cooperation from mechanics and drivers, etc.

. . . .

2. Under Section 42-1-160, Claimant did sustain a mental injury by repeated stresses, and specific trigger event, arising out of and in the course of his employment within the meaning therein.

RSI appealed the order of the single commissioner to the Full Commission. The Full Commission adopted the order of the single commissioner. The order of the Full Commission states:

In an Appellate Review, the Commission has the power to weigh the evidence as presented at the initial hearing and, after careful review in the instant case, the Commission, by majority vote, has determined that all of the Hearing Commissioner's Findings of Fact and Rulings of Law are correct as stated. Accordingly, they shall become, and hereby are, the law of the case; and therefore, the Order is sustained in its entirety.

## ORDER

The Order of the Single Commissioner filed in the above entitled matter on December 21, 2000, is hereby affirmed by the Panel and same shall constitute the Decision and Order of the Appellate Panel.

On appeal, the circuit court affirmed the findings of the Full Commission. The order of the circuit court provides:

On appeal to the commission tribunal, the law of mental injury on the job, without accompanying physical injury, was extensively debated by both counsel in their briefs and in their argument.

. . . .

The tribunal's order was based on their detailed knowledge of the facts of this case and their intimate knowledge of the law as relates to mental injury on the job, but said order does not cite such specifics even while upholding the rulings of the single commissioner.

. . . .

The single commissioner's opinion noted a specific trigger event for Frame's mental injury, arising from the facts specified on the date in question, such substantial evidence leading one to reasonably conclude that such facts represent unusual and extraordinary conditions of the employment, notwithstanding any conflicting argument which reasonably could also be made.

## STANDARD OF REVIEW

The substantial evidence rule of the Administrative Procedures Act governs the standard of review in a Workers' Compensation decision. *Corbin v. Kohler Co.*, 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); *Gray v. Club Group, Ltd.*, 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000); *Lake v. Reeder Constr. Co.*, 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998). In an appeal from the Commission, this court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Hamilton v. Bob Bennett Ford*, 336 S.C. 72, 518 S.E.2d 599 (Ct.App.1999); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (Supp. 2001); *see also Etheredge v. Monsanto Co.*, 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002) (stating court may reverse or modify Commission's decision if substantial rights of appellant have been prejudiced because administrative findings, inferences, conclusions or decisions are affected by other error of law). This court's review is limited to deciding whether the Commission's decision is unsupported by substantial evidence or is' controlled by some error of law. *See Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981); *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000); *see also Lyles v. Quantum Chem. Co. (Emery)*, 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (in reviewing decision of Workers' Compensation Commission, Court of Appeals will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law).

Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is .

evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Etheredge,* 349 S.C. at 456, 562 S.E.2d at 681–82; *Broughton v. South of the Border,* 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999). The Appellate Panel is the ultimate fact finder in Workers' Compensation cases and is not bound by the Single Commissioner's findings of fact. *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000); *Parsons v. Georgetown Steel,* 318 S.C. 63, 456 S.E.2d 366 (1995); *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729. The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.,* 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.,* 335 S.C. 46, 515 S.E.2d 532 (1999). It is not within our province to reverse findings of the Commission which are supported by substantial evidence. *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637.

### *LAW/ANALYSIS*

■ Frame asserts that he has suffered an accidental injury within the scope and course of his employment with RSI pursuant to section 42–1–160 of the South Carolina Code, and is entitled to benefits under the South Carolina Workers' Compensation Act for his mental illness. RSI contends there is no "injury" as defined by the statute.

■ Mental injuries are compensable if they are induced either by physical injury or by unusual or extraordinary conditions of employment. *Anderson v. Baptist Med. Ctr.,* 343 S.C. 487, 493, 541 S.E.2d 526, 528 (2001); *Getsinger v. Owens–Corning Fiberglas Corp.,* 335 S.C. 77, 80, 515 S.E.2d 104, 106 (Ct.App.1999); *Stokes v. First Natl. Bank,* 298 S.C. 13, 21, 377 S.E.2d 922, 926 (Ct.App.1988). A mental-mental injury is a purely mental injury resulting from emotional stimuli. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).

Mental or nervous disorders are compensable accidental injuries under the statute when the emotional stimuli or stressors are incident to or arise from unusual or extraordi-

nary conditions of employment. *Powell v. Vulcan Materials, Co.,* 299 S.C. 325, 384 S.E.2d 725 (1989). In *Powell,* this Court held that courts should use the heart attack standard to determine when a mental-mental injury is compensable. A heart attack suffered by an employee constitutes a compensable accident if it is induced by unexpected strain or overexertion in the performance of his duties of employment, or by unusual and extraordinary conditions in employment. *Bridges v. Housing Auth., City of Charleston,* 278 S.C. 342, 295 S.E.2d 872 (1982). However, if a heart attack results as a consequence of ordinary exertion that is required in performance of employment duties in an ordinary and usual manner, and without any untoward event, it is not compensable as an accident. *Fulmer v. South Carolina Elec. Gas Co.,* 306 S.C. 34, 410 S.E.2d 25 (Ct.App.1991). According to this Court in *Powell,* the heart attack standard applies to mental-mental injuries:

Mental or nervous disorders resulting from either physical or emotional stimuli are equally compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment. *Powell,* 299 S.C. at 327, 384 S.E.2d at 726; *see also, Stokes v. First Natl. Bank,* 306 S.C. 46, 410 S.E.2d 248 (1991).

*Shealy,* 341 S.C. at 457, 535 S.E.2d at 443. The requirement of "unusual or extraordinary conditions in employment" for a claimant to recover for a mental-mental injury refers to conditions to the particular job in which the injury occurs, not to conditions of employment in general. *Id.* at 456, 535 S.E.2d at 442.

In order for [a claimant] to recover workers compensation benefits, he must prove both: (1) that he was exposed to unusual and extraordinary conditions in his employment; and (2) that these unusual and extraordinary conditions were the proximate cause of his mental breakdown. *See generally Powell, supra; Gambrell v. Burleson,* 252 S.C. 98, 165 S.E.2d 622 (1969) (must prove causal connection between injury and subsequent condition in workers compensation cases).

*Id.* at 459, 535 S.E.2d at 444.

We find the Full Commission, as the ultimate fact finder in Workers' Compensation cases, failed to sufficiently specify its

factual findings to the degree required by the amended statute. *See Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000) (holding the Workers' Compensation Commission is the ultimate finder of fact). Specifically, by simply adopting the order of the single commissioner, **no finding of "extraordinary or unusual circumstances" leading to the injury was articulated.**

Frame relies on *Powell v. Vulcan Materials Co.*, 299 S.C. 325, 384 S.E.2d 725 (1989), for the proposition that a work-related altercation could legally amount to an "unusual and extraordinary" condition of employment notwithstanding the lack of any specific stated finding on the issue. Frame's reading of the case is misguided.

In 1996, partially in response to *Powell*, the legislature amended section 42-1-160 of the South Carolina Code to include the following provisions:

> Stress arising out of and in the course of employment unaccompanied by physical injury and resulting in mental illness or injury is not a personal injury **unless it is established** that the stressful employment conditions causing the mental injury were **extraordinary and unusual** to the normal conditions of the employment.
>
> [A mental injury] is not considered compensable if it results from any event or series of events which is **incidental to normal employer/employee relations** such as . . . [non-exclusive list] . . . except when these actions are taken in an **extraordinary and unusual** manner.

S.C.Code Ann. § 42-1-160 (Supp.2002) (emphasis added).

■ While this amendment maintains the part of *Powell* that held a purely mental injury compensable under the statute, it adds the requirement, non-existent when the court decided *Powell*, that the finder of fact make a specific finding that such an injury arose from "extraordinary and unusual" circumstances. The circumstances must be "extraordinary and unusual" in regard to the particular employment in question and not as applied to some general notion of the average reasonable employment. *See Shealy*, 341 S.C. at 457, 535 S.E.2d at 443.

Frame argues, per the "substantial evidence" rule and this court's standard of review, that the record provides a signifi-

cant number of facts to allow a reasonable person to conclude his injury was a result of unusual and extraordinary conditions. We agree that a reasonable mind could possibly make such a finding based on the evidence of this case. The issue here, however, is not whether such conclusion could be reached as an issue of fact, but rather, was such conclusion reached as required by law.

The findings of fact made by the Full Commission must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings. *Parsons v. Georgetown Steel*, 318 S.C. 63, 66, 456 S.E.2d 366, 368 (1995). The mere mention of a "specific trigger event" by the single commissioner, later cited by the circuit court as proof that this required finding was made, is not a satisfactory showing that the Full Commission found the conditions on the date of Frame's decompensation "extraordinary and unusual to the normal conditions of the employment." Although evidence on record indicates that this may very well have been the case, "the reviewing court may not make findings of fact as to basic issues of liability for compensation, where, to do so, would impose upon the court the function of determining such facts from conflicting evidence." *Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995). When an administrative agency acts without first making the proper factual findings required by law, the proper procedure is to remand the case and allow the agency the opportunity to make those findings. *See id.*

## CONCLUSION

We reverse the order of the circuit court and remand this case to the Workers' Compensation Commission to make the appropriate findings of fact on the issue of whether the stressful employment conditions causing the mental injury were extraordinary and unusual to the normal conditions of employment of Frame. Accordingly, the case is

**REVERSED AND REMANDED.**

GOOLSBY, J. and CURETON, A.J. concur.