631 S.E.2d 268

**Tom SMITH, Claimant/Respondent,**

v.

**NCCI, INC. as Employer, and Liberty Insurance Corporation, as Carrier, Defendants/Appellants.**

No. 4115.

Court of Appeals of South Carolina.

Heard May 8, 2006.

Decided May 22, 2006.

Rehearing Denied June 30, 2006.

---

6. This evidence was exploited by the solicitor in his closing argument.

238

242

Vernon F. Dunbar, of Greenville, for Appellants.

Preston F. McDaniel, of Columbia, for Respondent.

ANDERSON, J.:

NCCI appeals the trial court's order affirming the decision of the appellate panel of the workers' compensation commission (appellate panel). NCCI argues the trial court erred in finding (1) Tom Smith's mental injury was caused by unusual and extraordinary conditions of employment with NCCI; (2) Smith's physical injury to his back arose out of and in the course of employment with NCCI; (3) Smith's injuries were aggravated by his employment with NCCI; (4) Smith was entitled to disability benefits beginning March 19, 1999; (5) NCCI was not entitled to credit for short- and long-term disability benefits received by Smith; and (6) Smith's claim was not barred by the statute of limitations. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In April 1991, Smith began working with NCCI as a supervisor for the Test Audit Department of NCCI's Atlantic Division. Before working with NCCI, Smith worked as auditor with two other companies for a total of thirteen years. Smith commuted from Tampa to Boca Raton during his time as a supervisor. In 1993, Smith voluntarily stepped down from his supervisor position and became a senior auditor in Tampa.

As an auditor in Florida, Smith conducted test audits of insurance policies from both the voluntary market and the assigned risk market. A test audit is a process in which an insurance company's audits are checked to determine whether the premiums being charged are sufficient for the coverage being provided. Smith primarily worked in the area around Tampa and generally worked between forty and fifty hours a week. Smith usually met NCCI's weekly production requirements of nine audits. During this time, NCCI recognized Smith as one of its best test auditors in Tampa. In fact, Smith received a couple of awards in recognition of his production and work quality.

At some point, NCCI made various operational changes. First, NCCI changed its fee structure. NCCI changed from an assessment-based system, wherein NCCI would simply assess the insurance companies for all of the services the company requested and the various insurance commissions required, to a fee-for-services-based system, wherein NCCI charged an individual fee for the services performed. In addition, NCCI had a change in management. The new management heavily focused on production and meeting production goals. As part of the change in management, NCCI placed a new vice-president, Steve Axleray, in charge of its auditing divisions. In the summer of 1995, Axleray met with NCCI's auditors, chastised them for their lack of production, and informed them the new management expected increased production. Axleray informed the auditors that a voluntary severance package could be taken by anyone that did not wish to continue working with the newly-structured NCCI.

In June 1995, shortly after NCCI's operational changes went into effect, NCCI asked Smith to move to South Carolina

and continue working as a test auditor. Smith had extensive knowledge of the South Carolina Test Audit Program because he authored the program. Based on this knowledge and his understanding that the program focused on quality audits as opposed to production, Smith decided to stay with NCCI and turn down the severance package. Smith replaced NCCI's sole auditor in South Carolina, Elizabeth Crosby, whom he had hired to start the program.

The South Carolina test audit program was unique. The program focused specifically on the assigned risk market. Test audits on the assigned risk market are generally more time consuming and difficult than audits on the voluntary market. The assigned risk market, unlike the voluntary market, typically consists of smaller and newer companies that have disorganized or incomplete records. In addition, companies in the assigned risk market are usually in hard-to-find locations.

When Smith arrived in South Carolina, his job as a test auditor was very different from both his Florida job and from what he had envisioned and designed. First, Smith's work was dispersed across the entire state and consisted of very few local assignments. As a result, Smith was consistently driving six hundred miles or greater every week even though the job description called for driving only two to three hundred miles per week. Second, despite the program's design, Smith discovered NCCI management was more concerned with the quantity of the audits conducted than quality of the audits. Throughout Smith's time in South Carolina, NCCI constantly pressured Smith about meeting production goals. Third, although the job description provided for a forty-hour work week, Smith routinely worked over seventy hours per week and habitually worked on weekends. Further, Smith regularly stayed in hotels two to four nights a week when the job description provided that overnight stays should average one to two nights per week.

In October 1995 Smith took medical leave from work. Smith testified he took leave because the demands of the South Carolina job were "just nothing close to what [Smith] was told it was going to be." During this period, Smith was treated by Dr. Roger Deal. Deal's records indicate Smith had

been demonstrating symptoms of depression, bi-polar disorder, and obsessive compulsive disorder (OCD) in the year preceding July 1995, and Smith was still dealing with OCD and depression at the time of their initial visit. Deal's notes indicate Smith was taking assorted prescription drugs when they first met. Deal prescribed various medicines to assist Smith in his recovery. In March 1996, Smith was able to return to work.

In February 1999, NCCI changed Smith's company car from a full-size Ford Taurus to a smaller, subcompact Saturn. Smith began complaining of back pains immediately thereafter. Within a couple of months NCCI provided Smith with a raise to allow him to purchase a new, bigger car.

Smith visited Dr. Eleanay Ogburu–Ognonnaya for treatment of his back pain in March 1999. Ogburu–Ognonnaya's records from March 1999 indicate Smith specifically noted his new company car had no lumbar support, was very uncomfortable, and limited leg movement. Smith averred Ogburu–Ognonnaya advised him to reduce his driving and that the kind of driving required for Smith's work would make Smith's back worse.

In May 1999, Smith took leave from work and filed for short-term disability benefits. In his request for short-term disability, Smith stated his last day of work was May 26, 1999. Smith noted the symptoms that led him to cease working were (1) excessive stress and fatigue, which he listed as an illness, and (2) an injury to his lower back. Smith provided March 8, 1999 as the date of onset of the symptoms for excessive fatigue, and the week of February 15–19, 1999 as the first onset of symptoms for the back injury.

On June 1, 2000, Smith filed a workers' compensation claim alleging injuries to the "back, legs, psychological/whole person" culminating on May 27, 1999. Hearings were conducted in this matter on August 23, 2001; February 28, 2002; and March 11, 2002. NCCI alleges Smith withdrew his original claim after NCCI filed a Form 51 and filed another claim raising the same allegations on November 11, 2000, which was again withdrawn without prejudice by consent on March 13, 2001. NCCI asserts Smith refiled his claim on March 19, 2001, making identical assertions. The record evidences nei-

ther Smith's withdrawal of the original claim nor the filing of subsequent claims. Nevertheless, whether Smith filed in June 2000 or in March 2001 is irrelevant because the allegations and issues are the same.

The hearing commissioner found Smith suffered a compensable mental or psychological injury due to unusual and extraordinary conditions of his employment. The commissioner further found Smith sustained a compensable back injury as a result of his work activity requiring Smith to drive extremely long distances in a subcompact vehicle. The commissioner awarded Smith temporary total disability compensation benefits and medical benefits. The commissioner denied NCCI credit for short- and long-term disability benefits paid to Smith.

NCCI appealed the commissioner's decision to the appellate panel. The appellate panel determined that all of the commissioner's findings of fact and rulings of law were correct and adopted the commissioner's order in its entirety. NCCI appealed to the circuit court, and the circuit court affirmed the appellate panel.

## STANDARD OF REVIEW

■ "The South Carolina Administrative Procedures Act governs judicial review of a decision of an administrative agency." *Clark v. Aiken County Gov't*, 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct.App.2005). Section 1–23–380(A)(6) of the South Carolina Code (2005) establishes the substantial evidence rule as the standard of review. *See also Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 133, 276 S.E.2d 304, 305 (1981). Under this standard, a reviewing court may reverse or modify an agency decision based on errors of law, but may only reverse or modify an agency's findings of fact if they are clearly erroneous. *See* S.C.Code Ann. § 1–23–380(A)(6)(d) and (e) (2005).

■ "On appeal, this court must affirm an award of the Workers Compensation Commission in which the circuit court concurred if substantial evidence supports its findings." *Peoples v. Henry Co.*, 364 S.C. 123, 127, 611 S.E.2d 527, 528–29 (Ct.App.2005); *see also Frame v. Resort Servs. Inc.*, 357 S.C. 520, 528, 593 S.E.2d 491, 495 (Ct.App.2004) ("It is not within our province to reverse findings of the Commission which are

supported by substantial evidence."). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Baggott v. S. Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998). "Quantitatively, substantial evidence is something less than the weight of the evidence." *Howell v. Pac. Columbia Mills*, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the commission's findings from being supported by substantial evidence." *Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 188, 564 S.E.2d 694, 697 (Ct.App.2002).

## *ISSUES*

I. Are NCCI's issues on appeal properly preserved for our review?

II. Did Smith suffer a compensable mental injury caused by unusual and extraordinary conditions of employment with NCCI?

III. Did Smith suffer a compensable physical injury to his back caused by conditions of employment with NCCI?

IV. Did the appellate panel err in finding that Smith's injuries were aggravated by his employment conditions with NCCI?

V. Did the appellate panel err by awarding temporary total disability benefits commencing on March 19, 1999?

VI. Did the appellate panel erroneously deny NCCI credit for short- and long-term benefits received by Smith?

VII. Did the appellate panel err in finding Smith's claim is not barred by the statute of limitations?

## *LAW/ANALYSIS*

### I. Preservation

Initially, Smith argues each of NCCI's issues are not preserved for review. When a trial court does not explicitly rule on an argument raised, and the appellant makes no Rule 59(e), SCRCP, motion to obtain a ruling, the appellate court

may not address the issue. *Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991).

The circuit court considered all of the issues raised and affirmed the appellate panel's order. NCCI's Notice of Intent to Appeal to Circuit Court specifically raises each of the issues presented for appeal to this Court. Accordingly, we find each of the issues presented for appeal was properly preserved for our review.

## II. Mental Injury

NCCI contends the appellate panel erred in finding Smith suffered a compensable mental injury under the Workers' Compensation Act because Smith's employment conditions were not extraordinary and unusual and did not cause Smith's mental injury. We disagree.

A compensable injury under the Workers' Compensation Act is defined by section 42–1–160, which states:

"Injury" and "personal injury" shall mean only injury by accident arising out of and in the course of the employment

. . .

Stress arising out of and in the course of employment unaccompanied by physical injury and resulting in mental illness or injury is not a personal injury unless it is established that the stressful employment conditions causing the mental injury were extraordinary and unusual in comparison to the normal conditions of the employment.

Stress arising out of and in the course of employment unaccompanied by physical injury is not considered compensable if it results from any event or series of events which is incidental to normal employer/employee relations including, but not limited to, personnel actions by the employer such as disciplinary actions, work evaluations, transfers, promotions, demotions, salary reviews, or terminations, except when these actions are taken in an extraordinary and unusual manner.

S.C.Code Ann. § 42–1–160 (Supp.2005).

In order to recover workers' compensation benefits for a mental injury, the claimant must prove both: (1) that he was exposed to unusual and extraordinary conditions in his

employment; and (2) that these unusual and extraordinary conditions were the proximate cause of his mental breakdown. *Doe v. S.C. Dep't of Disabilities and Special Needs,* 364 S.C. 411, 418, 613 S.E.2d 785, 789 (Ct.App.2005). The requirement of "unusual or extraordinary conditions in employment" refers to conditions to the particular job in which the injury occurs, not to conditions of employment in general. *Shealy v. Aiken County,* 341 S.C. 448, 457, 535 S.E.2d 438, 443 (2000).

As the finder of fact, the appellate panel found the conditions of Smith's employment were extraordinary and unusual for a test auditor. The panel specifically found the unique requirements of conducting the South Carolina test audit program made the application of the general standards for a test auditor "unattainable, unreasonable, and unusual." The appellate panel further found NCCI's unreasonable expectations and production goals, the continual and unrelenting criticism and pressure to meet these unattainable production goals, and Smith's extremely long work hours all contributed to cause Smith's mental injury.

### A. Extraordinary and Unusual Conditions

■ There is substantial evidence in the record to support the appellate panel's finding that Smith, as a test auditor in South Carolina, was exposed to unusual and extraordinary conditions in his employment.

First, experts in the auditing industry opined that Smith's employment conditions were extraordinary and unusual.

Second, Smith worked in the South Carolina test audit program, a unique program that focused specifically on the assigned risk market. As a result, meeting production goals in South Carolina was more difficult than meeting production goals in other states that tested both the assigned risk market and the voluntary market.

Third, Smith was unlike other auditors with NCCI in that he mainly conducted test audits. NCCI guidelines allowed test auditors to conduct some variation of inspections to help satisfy the production requirement of nine test audits per week. Bowles, a test auditor with NCCI in South Carolina from 1995 through 1999, testified his job involved conducting

test audits *and* less time consuming inspections while Smith focused "just about 100% on the test audits."

Fourth, Smith's employment conditions in South Carolina were unusual because his assignments were dispersed throughout South Carolina and required significant amounts of driving. Smith testified he typically drove in excess of six hundred miles per week despite the job description calling for only two to three hundred miles per week. Other NCCI test auditors averaged well below six hundred miles of driving per week.

Finally, NCCI constantly and continuously harassed Smith about production. Smith testified he received a "steady flow" of memos, "at times every day," informing him NCCI needed more production. While the record indicates NCCI pressured all of its auditors, the pressure on Smith was exacerbated because the constant demands were being made despite Smith's unique situation. In addition, the testimony provides that other companies did not pressure auditors to the extent NCCI did. The pressure imposed on Smith was not "incidental to normal employer/employee relations" because of the constant and continuous nature of the demands and because of Smith's unique position. *See* S.C.Code Ann. § 42–1–160 (Supp.2005).

Substantial evidence in the record supports a finding that Smith's employment conditions were extraordinary and unusual.

## B. Cause of Mental Injury

■■■ There is substantial evidence in the record supporting the appellate panel's finding that the extraordinary and unusual conditions of Smith's employment caused his mental injury.

First, doctors' opinions and records indicate Smith's condition was linked to stress from his job. Dr. Franklin J. Klohn, Jr., in an answer to an interrogatory, opined that Smith's psychological condition was most probably caused by the stressors of his job. In late February 1999, Smith visited Dr. Rex Rawls and complained of "Chronic fatigue syndrome, worsening over the last eight years." Rawls provided Smith with a note stating that he may need a week off to try to recover from the excessive fatigue. Rawls' notes from a visit

in May 1999 provide that Smith was requesting disability "so he won't have to continue with his high stress job."

Second, Smith's testimony and actions lend further support to the finding that Smith's employment conditions caused his mental injury. Smith testified that he took medical leave from work from October 1995 through March 1996 because the demands of the South Carolina job were "just nothing close to what [Smith] was told it was going to be." Further, when Smith filed for short-term disability in May 1999 he cited excessive stress and fatigue as one of the reasons for the request and listed March 8, 1999 as the date of the onset of the symptoms.

Third, another auditor, Chris Bowles, testified he developed health problems as a result of the stresses accompanied by working with NCCI. Specifically, Bowles testified he was diagnosed with Barrett's esophagus (a pre-cancerous condition) and ulcers of the esophagus, which he attributed to the employment conditions with NCCI.

The record provides substantial evidence to support a finding that NCCI's employment conditions caused Smith's injury.

 Admittedly, the record indicates Smith had numerous non-employment stressors that may have contributed to or caused his mental injury. The record provides that during the course of Smith's employment (1) he had trouble selling his home; (2) he was diagnosed with bi-polar disorder and depression prior to moving to South Carolina; (3) he was involved in a lawsuit regarding the construction of his South Carolina home; (4) he received a couple of speeding tickets; (5) his daughter had numerous medical problems; (6) he was involved in a lawsuit stemming from a 1995 motor vehicle accident; and (7) he had various medical problems including an esophagus problem and two angioplasty surgeries or treatments. However, "[t]he findings of the agency are presumed correct and will be set aside only if unsupported by substantial evidence." *Kearse v. State Health & Human Servs. Fin. Comm'n,* 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995). Moreover, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 338–39, 513

S.E.2d 843, 845 (1999). Thus, because there is substantial evidence in the record to support the finding of the appellate panel, the contrary evidence is inconsequential.

## C. Proximate Cause

▇▇▇ NCCI next asserts the appellate panel's order failed to address the issue of proximate cause of Smith's mental injury, and therefore, this Court should remand the case and allow the appellate panel the opportunity to make a finding of cause. We disagree.

▇▇▇ South Carolina Code Annotated section 1–23–350 (2005) provides, in relevant part, that "[i]f . . . a party submitted proposed findings of fact, [an agency] decision shall include a ruling upon each proposed finding." The findings of fact made by the appellate panel must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 531, 593 S.E.2d 491, 497 (Ct.App.2004). When an administrative agency acts without first making the proper factual findings required by law, the proper procedure is to remand the case and allow the agency the opportunity to make those findings. *Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 282, 461 S.E.2d 392, 395 (1995).

The appellate panel made sufficient findings of fact regarding the proximate cause of Smith's mental injury. The appellate panel adopted the commissioner's order in its entirety. The commissioner's order specifically states:

> [Smith's] psychological condition was as a result of unusual and/or extraordinary conditions in [Smith's] employment specifically unreasonable expectations and production goals from his employer, continual and unrelenting stress on [Smith] including criticism and pressure to meet those unattainable goals and extremely long hours in excess of 70 hours per week put in by [Smith] in an effort to try to reach those goals.

Therefore, the appellate panel's findings of fact are sufficiently detailed regarding the proximate cause of Smith's mental injury.

## III. Physical Injury

NCCI alleges the appellate panel erred in finding Smith suffered a compensable injury to his back. Specifically, NCCI argues the appellate panel committed error in disregarding the report of ergonomist Elizabeth Neal Miall and in finding Smith's excessive driving led to his injury because he had been driving long distances for years. We disagree.

For an injury to be compensable, it must arise out of and in the course of employment. S.C.Code Ann. § 42–1–160 (Supp.2005). "The phrase 'arising out of' refers to the origin of the cause of the accident." *Clade v. Champion Labs.*, 330 S.C. 8, 10, 496 S.E.2d 856, 857 (1998). " 'An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury.' " *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996) (quoting *Owings v. Anderson County Sheriff's Dep't*, 315 S.C. 297, 299, 433 S.E.2d 869, 871 (1993)).

"The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." *Clade*, 330 S.C. at 11, 496 S.E.2d at 857. However, injured employees are not required to prove their injuries were caused by specific events in order to recover workers' compensation benefits. *Id.* at 12, 496 S.E.2d at 858.

The appellate panel found Smith's back injury arose out of and in the course of his employment with NCCI. There is substantial evidence in the record to support this finding. First, Smith complained of neck and lower back pain immediately after receiving the smaller company car. Smith testified that his back began hurting him the very first day he drove the subcompact Saturn. Smith further professed his doctor instructed him to take time off from work because the extensive driving required by Smith's job made his back injury worse. In addition, the record provides that in June 1999, Dr. Donald Johnson, with the Carolina Spine Institute, opined Smith "needs to be out of the work place" because driving exacerbates Smith's lower back pain. Further, Dr. Ogburu–

Ognonnaya's records indicate that in March 1999, Smith specifically noted his new company car had no lumbar support, was very uncomfortable, and limited his leg movement. Finally, a memo from Bailey to NCCI indicates Bailey experienced similar discomforts with the smaller company car.

The record contains evidence suggesting Smith's back injury may not have been caused by his employment conditions. In 1995 Smith's back and neck were injured in a car accident, and, over the years, Smith sometimes informed various doctors of minor back pains and persistent headaches. NCCI presented an ergonomic analysis from Miall stating there were no appreciable differences between the ride, suspension, and measurements of the two cars, and "you could determine [Smith's] back pain was not caused by the use of the Saturn SL 2." However, when a conflict in the evidence exists, the findings of fact of the administrative agency are conclusive. *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 338–39, 513 S.E.2d 843, 845 (1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the appellate panel. *Cf. Ross v. American Red Cross*, 298 S.C. 490, 492, 381 S.E.2d 728, 730 (1989).

Because there is substantial evidence in the record to support the appellate panel's findings, we affirm the circuit court's decision.

## IV. Aggravation of Injuries

NCCI next argues the appellate panel did not make sufficient findings of fact to support its ruling that Smith's employment conditions aggravated Smith's mental and physical injuries. We agree.

"The right of a claimant to compensation for aggravation of a pre-existing condition arises only where there is a dormant condition which has produced no disability but which becomes disabling by reason of the aggravating injury." *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 493, 541 S.E.2d 526, 528 (2001). "Aggravation of pre-existing psychiatric problems is compensable if that aggravation is caused by a work-related physical injury." *Id.*

 The appellate panel's ruling on this issue is insufficient. The findings of fact made by the appellate panel must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings. *Cf. Frame v. Resort Servs. Inc.*, 357 S.C. 520, 531, 593 S.E.2d 491, 497 (Ct.App.2004). When an administrative agency acts without first making the proper factual findings required by law, the proper procedure is to remand the case and allow the agency the opportunity to make those findings. *Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 282, 461 S.E.2d 392, 395 (1995). The appellant panel's order makes no specific finding that Smith's injuries were aggravated by his employment conditions; the only reference to the aggravation of a pre-existing condition is that one of the cases that specifically controls this case is *Anderson*, 343 S.C. 487, 541 S.E.2d 526. The appellate panel's order is not sufficiently detailed to enable a review by this Court; nevertheless, because we affirm on other grounds we do not need to remand for a proper finding of fact on this issue.

## V. Payment of Benefits

NCCI asserts the appellate panel erred in awarding disability benefits and medical treatment beginning on March 19, 1999, prior to the date of the alleged accident and disability. We disagree.

 Sections 42–9–200 and –230 of the South Carolina Code Annotated (1985 and Supp. 2005) provide that compensation for disability shall be allowed from the date of disability. Section 42–15–60 states that medical benefits shall be provided "for a period not exceeding ten weeks from the date of injury . . . and for such additional time as in the judgment of the Commission will tend to lessen the period of disability[.]" Essentially, workers' compensation benefits accrue along a time continuum: temporary total disability benefits are available from the date of injury through the date of maximum medical improvement (MMI) and post-MMI benefits may be awarded either as a permanent total or partial disability, or as a percentage of impairment to a scheduled member. *Hendricks v. Pickens County*, 335 S.C. 405, 414 n. 2, 517 S.E.2d 698, 703 n. 2 (Ct.App.1999).

▮ The record indicates Smith's injury began prior to the date the commission awarded medical benefits. When Smith filed for short-term disability, he listed March 8, 1999 as the date of onset of the symptoms for excessive fatigue and the week of February 15–19, 1999 as the first onset of symptoms for the back injury. Thus, the circuit court did not err in affirming the award of medical benefits commencing March 19, 1999.

## VI. Credit

NCCI next contends the appellate panel erred in finding NCCI is not entitled to a credit for payment of short- and long-term disability benefits received by Smith. Specifically, NCCI asserts it is entitled to a credit for benefits paid because Smith received short-term disability benefits from October 1995 through March 1996 and was awarded long-term disability benefits prior to May 27, 1999, the date Smith's injury admittedly culminated. We disagree.

▮ Initially we note this issue may not be preserved for our review. Only issues raised and ruled upon by the commission are cognizable on appeal. *See e.g., TNS Mills, Inc. v. S.C. Dep't of Rev.*, 331 S.C. 611, 503 S.E.2d 471 (1998). The appellate panel's order does not specifically address this issue.

▮ Although we find preservation tenuous at best, we nevertheless proceed to the merits. Section 42–9–210 provides:

> Any payments made by an employer to an injured employee during the period of his disability, or to his dependents, which· by the terms of this Title were not due and payable when made may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation; *provided,* that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

S.C.Code Ann. § 42–9–210 (1985). "In order for payments to be deductible, they must have been made with reference to liability under the provisions of the Act and intended to be in lieu of compensation." *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 298, 519 S.E.2d 583, 599 (Ct.App.1999).

■ The record is devoid of evidence suggesting any short-term or long-term disability benefits received by Smith were made with reference to liability under the Act and in lieu of compensation. Accordingly, we find the appellate panel did not err in finding that NCCI is not entitled to a credit for any short-term or long-term benefits paid to Smith.

## VII. Statute of Limitations

Finally, NCCI alleges Smith's claim is barred by the statute of limitations prescribed in section 42–15–40 of the South Carolina Code (Supp.2005). We find this argument manifestly without merit.

■ Section 42–15–40 provides "[t]he right to compensation ... is barred unless a claim is filed with the commission within two years after an accident[.]" Smith's mental and physical injury culminated in disability on May 27, 1999. Smith filed his original Form 50 to initiate this claim on June 1, 2000. Accordingly, we find Smith's claim is not barred by the statute of limitations. Even if Smith filed on March 19, 2001, as asserted by NCCI, his claim still falls inside the two-year statute of limitations.

## CONCLUSION

We conclude substantial evidence in the record supports the appellate panel's finding that Smith suffered a mental injury caused by unusual and extraordinary employment conditions with NCCI, and that Smith suffered a physical injury to his back arising out of and in the course of his employment with NCCI. The appellate panel did not err in awarding benefits commencing March 19, 1999, and in denying NCCI a credit for benefits received by Smith. We hold Smith's claim is not barred by the statute of limitations. Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, J., concur.