PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Martha Geathers, Claimant.
 v.
 3V, Inc., Employer and EBI Companies, Carrier/Defendants, 
 And, Liberty Mutual Insurance Company, Carrier/Defendant Of Whom Liberty 
 Mutual Insurance Company is the, Appellant,
 and, Martha Geathers, 3V, Inc., and EBI Companies 
 are the, Respondents.
 
 
 

 
 
 
Appeal From Georgetown County
Benjamin H. Culbertson, Special Circuit Court Judge
 
 
 

Unpublished Opinion No. 2004-UP-542
Heard October 13, 2004  Filed October 
 26, 2004

REVERSED

 
 
 
Pope D. Johnson, III, of Columbia, for Appellant.
Frederick M. Zeigler, of Columbia, Andrew D. Smith and Kirsten 
 Leslie Barr, both of Mt. Pleasant, for Respondents.
 
 
 

PER CURIAM:  In this workers compensation 
 action, we consider whether substantial evidence exists to support a finding 
 that where claimant Martha Geathers sustained compensable injuries in two separate 
 accidents while working for the same employer, liability for the period following 
 the second injury must be partially borne by the insurer who provided coverage 
 when the first accident occurred.  Here, a single commissioner and appellate 
 panel of the South Carolina Workers Compensation Commission (Commission) concluded 
 such evidence exists, relying on their findings that Geathers had not reached 
 maximum medical improvement (MMI) for injuries sustained in the first accident, 
 her treating physician had not released her from treatment of injuries sustained 
 in the first accident, and that the injuries she sustained in the two accidents 
 were intertwined, indistinguishable, and inseparable.  On appeal, the circuit 
 court made contradictory findings based on its own view of conflicting evidence 
 in the record.  Ultimately, the circuit court found that the insurer providing 
 coverage when the second accident occurred, Liberty Mutual Insurance Company 
 (Liberty Mutual), was exclusively liable for compensation for the period following 
 the second injury.  Deferring to the factual findings of the Commission as mandated 
 by the applicable standard of review, we reverse.
FACTS 
Geathers sustained compensable back and leg injuries 
 in two accidents while employed by 3V, Inc. (3V).  The first accident occurred 
 on July 20, 1999 when EBI, Inc., (EBI) provided workers compensation coverage 
 to 3V.  The second accident occurred on May 11, 2000, when Liberty Mutual provided 
 3Vs coverage.  
Following the first accident, Geathers was out 
 of work from July 21, 1999 to August 21, 1999.  She returned to work at 3V and 
 was placed on light duty until October 28, 1999, after which she resumed the 
 duties she performed before the July 1999 accident.  In the interim, Geathers 
 sought treatment from Dr. Jeffery C. Wilkins, a physiatrist, [1] for her back and leg injuries.  Dr. Wilkins ordered that Geathers 
 undergo therapy and prescribed pain medicine for her use.  He also ordered that 
 she not work for three weeks, and then return to light duty at work.  Geathers 
 discontinued office visits with Dr. Wilkins in January 2000, after about nine 
 visits.  However, he continued to prescribe pain medicine.  Although Dr. Wilkins 
 also recommended additional therapy, Geathers failed to comply. 
Geathers continued working and taking Dr. Wilkinss 
 prescribed pain medication until the May 2000 accident.  She never returned 
 to work after the second accident.  When the second accident occurred, she again 
 sought treatment from Dr. Wilkins, who continued to prescribe pain medicine 
 and therapy.
Shortly after the second accident, Geathers filed 
 a claim seeking workers compensation benefits for injuries she sustained in 
 the July 1999 accident.  3V and EBI, the insurer providing 3Vs coverage at 
 the time of the 1999 accident, admitted that Geathers sustained a back injury 
 in the 1999 accident, but denied that she needed medical care for the injury 
 because she had reached MMI. 
Geathers filed a second claim against 3V on August 
 14, 2000.  This claim sought compensation for injuries she sustained in the 
 second accident, which occurred in May 2000 when Liberty Mutual provided 3Vs 
 workers compensation insurance coverage.  3V and Liberty Mutual denied this 
 second claim, taking the position that her injuries resulted from the first 
 accident.  
In March 2001, a single 
 commissioner conducted a hearing on Geatherss claims.  At the hearing, EBI 
 took the position that Geatherss injuries from the 1999 accident were no longer 
 compensable because she had reached MMI, she had been released from Dr. Wilkinss 
 care in January 2000, and her injuries were not the same as those sustained 
 in the first accident.  Conversely, Liberty Mutual argued that Geathers never 
 reached MMI for injuries related to the first accident, and that at a minimum 
 EBI should share liability for compensating Geathers.  Conflicting testimony 
 from Dr. Wilkins arguably supports both positions.  
First, Dr. Wilkinss medical 
 records provide no clear indication that he ever made a finding that Geathers 
 reached MMI or released Geathers from his care following the 1999 accident.  
 Instead, the records suggested that he continued to recommend therapy and prescribe 
 pain medicine to Geathers beyond the January 2000 point at which Geathers stopped 
 visiting him for treatment.  
Next, in deposition testimony 
 Dr. Wilkins agreed that when he examined Geathers following the second accident, 
 she had the exact same physical exam signs, had the same objective and subjective 
 complaints as she had the entire time and that [t]his was the same problem 
 she had following the 1999 accident.  He further agreed the symptoms and the 
 problems that she was having [did] relate back to July 1999.  Dr. Wilkins added 
 that the first accident caused whatever condition she might be in today following 
 the 2000 accident.  He also testified:

[T]he problem that she had from the first and from the second 
 and today is all the same problem.  The, the ideology and cause of her pain 
 is the same.  The, the  I would consider that the second injury, per say [sic], 
 is, was actually just an aggravation of her initial injury.  Thats the  if 
 you look at her, if you look at her pain diagrams and way [sic] she describes 
 it, its identical both by my examination as well as by [Geatherss] report 
 on her pain diagrams as far as distribution.

Dr. Wilkins further agreed that Geatherss current 
 condition flowed from the first accident, and that if she hadnt had the original 
 injury  itd be reasonable that she probably would not have had the second 
 injury  which is actually aggravation.  Dr. Wilkinss deposition testimony 
 stands in stark contrast to his testimony at the hearing.  For example, at the 
 hearing Dr. Wilkinss opinions largely favored the position of EBI in terms 
 of MMI and the relationship between the two accidents.
Geathers testified that she continued to receive 
 prescription pain medicine from Dr. Wilkins even after she voluntarily stopped 
 seeking treatment from him in January 2000.  Especially significant is 
 Geatherss testimony concerning the events on the day of the second accident, 
 particularly the continuing nature of the pain she experienced prior 
 to the second injury.  According to Geathers, on the day of the second 
 accident but before the second accident occurred, she experienced a lot of 
 sharp pain in her leg and lower back, which were the same symptoms and same 
 pain she had experienced since the first work-related accident in July 1999.  
 Thus, Geathers was still in pain and still having problems from the first 
 accident at the time of the second accident.  She subsequently confirmed that 
 the severe back pain experienced at the time of the second accident was identical 
 to the pain she experienced as a result of the first accident.  This testimony, 
 deemed credible by the Commission, is consistent with those portions of Dr. 
 Wilkinss testimony that the Commission adopted.
Following the hearing, the 
 single commissioner issued an order finding that the 2000 accident resulted 
 in an injury that:

was a re-injury to the 
 same body parts for which [MMI] had not been established; that the [May 2000] 
 accident was intervening, but not totally independent of the [July 1999] accidental 
 injury and the [May 2000] accidental injury aggravated, exacerbated, and worsened 
 [Geatherss] condition; and the injuries from the two accidental injuries are 
 intertwined, indistinguishable, and inseparable beginning May 11, 2000 and[,] 
 and remain so as of the date of this hearing.

Based on these findings, 
 the single commissioner ordered that EBI and Liberty Mutual each equally pay 
 Geathers compensation and all medical and related costs incurred by [Geathers] 
 as a result of her injuries by accident as provided and allowed under the South 
 Carolina Workers Compensation Act; and during the remainder of disability continuing 
 from [Geatherss] injuries by accident [EBI and Liberty Mutual] shall continue 
 to furnish free of charge all such medical and related costs incurred by [Geathers] 
 .  EBI appealed the order of the single commissioner to an appellate panel 
 of the Commission, which affirmed.
EBI appealed to the circuit 
 court, which conducted a hearing in January 2002.  In March 2003, the circuit 
 court issued an order reversing the Commissions order holding EBI liable for 
 Geatherss compensation following the 2000 accident, finding that there was 
 simply no evidence in the record to support the Commissions finding that [Dr.] 
 Wilkins had not released [Geathers] in January 2000 at maximum medical improvement.  
 It based this finding upon [] Dr. Wilkinss sworn testimony at the hearing, 
 the medical records in evidence, and [Geatherss] own admission .  The circuit 
 court also rejected the Commissions finding that the two accidental injuries 
 were intertwined, indistinguishable, and inseparable beginning on the date 
 of the 2000 accident.  In so doing, the circuit court stated:

Based on upon the evidence 
 in the record, the [2000] accident is clearly distinguishable from the [1999] 
 accident because [Geatherss] need for medical and compensation benefits after 
 [the 2000 accident] was necessitated solely by the [2000] accident and that 
 accident caused physical injuries separate and distinct from any injuries related 
 to the [1999] accident.  The Commission cites no evidence in support of its 
 finding that the [1999] accident was distinguishable from the [2000] accident.  
 Because this finding is otherwise not supported by substantial evidence in the 
 record, it must be reversed.

Consequently, the circuit 
 court held Liberty Mutual solely responsible for the Geathers benefits following 
 the 2000 accident.
Liberty Mutual made a motion seeking the circuit court 
 to reconsider its order, which the circuit court denied.  This appeal followed.
LAW/ANALYSIS
Liberty Mutual argues there is 
 substantial evidence to support the findings of the Commission.  Liberty Mutual 
 further argues that the circuit court reached contrary conclusions by impermissibly 
 weighing the evidence and making its own findings of fact.  As a consequence, 
 Liberty Mutual argues the circuit court erred in finding it exclusively liable 
 for Geatherss compensation benefits for the period following the 2000 injury.  
 We agree and reverse.
In workers compensation cases, a court sitting 
 in an appellate capacity will not overturn a decision of the Commission unless 
 the decision is unsupported by substantial evidence or controlled by an error 
 of law.  Lark v. Bi-Lo, Inc., 276 S.C. 130, 135, 276 S.E.2d 304, 306 
 (1981).  Substantial evidence is not merely a scintilla of evidence nor the 
 evidence viewed blindly from one side of the case, but is evidence which, considering 
 the record as a whole, would allow reasonable minds to reach the conclusion 
 that the administrative agency reached or must have reached in order to justify 
 its action.  Id.  The substantial evidence rule does not allow judicial 
 fact-finding, or the substitution of judicial judgment for agency judgment.  
 Todds Ice Cream, Inc. v. South Carolina Employment Commn, 281 S.C. 
 254, 258, 315 S.E.2d 373, 375 (Ct. App. 1984).  Rather, the Commission is the 
 ultimate fact-finder, and neither the circuit court sitting in an appellate 
 capacity nor this court may substitute its judgment for that of the Commission 
 as to the weight of the evidence on questions of fact.  Linnen v. Beaufort 
 County Sheriffs Dept, 305 S.C. 341, 345, 408 S.E.2d 248, 250 (Ct. App. 
 1991).  
Here, the record contains ample evidence from Geathers and Dr. Wilkins to support 
 the version of facts adopted by the Commission.  With respect to Geatherss 
 testimony, we note that she testified that she continued to suffer symptoms 
 of severe and sharp back pain resulting from her 1999 accidental injuries 
 after she stopped seeking treatment, apart from prescription pain medicine, 
 from Dr. Wilkins in January 2000.  Significantly, she testified that she was 
 suffering these painful symptoms on the date of the 2000 accident, just prior 
 to the accident.  
Regarding Dr. Wilkinss testimony, 
 his notes of Geatherss treatment do not indicate a finding of MMI or that he 
 released her from his treatment in January 2000.  The record further supports 
 the finding that Dr. Wilkins continued to prescribe pain medicine to Geathers, 
 at her request, even after she stopped visiting his office for treatments.  
 Moreover, his deposition testimony provides substantial evidence for the findings 
 of the Commission concerning the nexus between the 1999 and 2000 accidental 
 work-related injuries. 
We find the testimony of Geathers 
 and Dr. Wilkins provides substantial evidence to support the version of facts 
 adopted by the Commission.  See Anderson v. Baptist Med. Ctr., 
 343 S.C. 487, 492-93, 541 S.E.2d 526, 528 (2001) (Where there is a conflict 
 in the evidence, either by different witnesses or in the testimony of the same 
 witness, the findings of fact of the Commission are conclusive.).   Accordingly, 
 we find that the circuit court erred in adopting its own view of the facts in 
 reaching its conclusions regarding whether Geathers reached MMI, whether Geathers 
 had been released from care by Dr. Wilkins in January 2000, and whether the 
 injuries she sustained in the two accidents were indistinguishable so as to 
 require both insurance carriers to share liability for providing compensation 
 to Geathers.
EBI nevertheless contends that Liberty 
 Mutual should have been held solely liable for compensation for the period following 
 the May 2000 accidental injury.  In support of its contention, EBI cites Gordon 
 v. E.I. DuPont de Nemours, 228 S.C. 67, 76, 88 S.E.2d 844, 848 (1955) for 
 the propositions that where a latent or quiescent weakened, but not disabling, 
 condition resulting from disease is by accidental injury in the course and scope 
 of employment aggravated or accelerated or activated, with resulting disability, 
 such disability is compensable and if such disability is proximately caused 
 by the subsequent accidental injury, compensability is referable to that, and 
 not the earlier, one.  EBI argues that Gordon mandates a finding in 
 its favor as a matter of law.  We find this argument unavailing in light of 
 the factual-driven nature of the Gordon decision.  See id., 
 228 S.C. at 70, 88 S.E.2d at 845 (There is but one fundamental issue involved, 
 and that a factual one, namely: was appellants compensable disability caused 
 by the accident of March 9, 1951, or by the accident of July 23, 1951.).  Here, 
 the Commission determined that Geatherss 1999 and 2000 injuries were not separate 
 and distinct injuries but instead were intertwined, indistinguishable, and 
 inseparable.  In making this finding, we are constrained by the applicable 
 substantial evidence standard of review.  Similarly, the Gordon court 
 emphasized that its role was to affirm the Commissions findings where supported 
 by substantial evidence.  Id.  (That issue having been decided by the 
 Commission as before stated, our review is limited to determination of whether 
 there was any competent testimony tending to support the Commissions finding.).  
 We reject EBIs efforts on appeal to recast the issue as one of law in an attempt 
 to avoid application of the substantial evidence test.
CONCLUSION
We reverse the circuit court order and reinstate the order of the Commission.  
 Accordingly, we do not reach the remaining grounds for reversal.  See 
 Futch v. McAllister Towing, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) 
 (ruling that an appellate court need not address remaining issues when resolution 
 of prior issue is dispositive of remaining issues). 
REVERSED.
HEARN, C.J., HUFF and KITTREDGE, JJ., concur.

 
 
 [1] A physiatrist is a physician who specializes in physical 
 medicine.  Merriam-Websters Collegiate Dictionary 877 (10th ed. 1993).  
 Physical medicine is a branch of medicine concerned with the diagnosis and 
 treatment of disease and disability by physical means such as radiation, 
 heat, and electricity.  Id.