THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ronnie E. Robinson, Respondent,
 v.
 Greenville Water System and State Accident Fund, Appellants.
 
 
 

Appeal from Greenville County
 Alexander S. Macaulay, Circuit Court Judge
Unpublished Opinion No. 2007-UP-311
Submitted June 1, 2007  Filed June 12, 2007    

AFFIRMED

 
 
 
 Cynthia Burns Polk and T. McRoy Shelley, III, both of Columbia, for Appellants.
 Kathryn Williams, of Greenville, for Respondent.
 
 
 

PER CURIAM:  A Single Commissioner of the South Carolina Workers Compensation Commission awarded continuing benefits to Ronnie E. Robinson for an injury to his right shoulder and resulting psychological harm.  The award was upheld by both the Appellate Panel of the Commission and the circuit court.  The Greenville Water System and the State Accident Fund (collectively, Appellants) appeal.  We affirm, holding substantial evidence supports the Commissions findings.[1]
FACTS
On July 1, 2003, Robinson, then 26 years old, suffered an admitted injury to his right shoulder while working for the Greenville Water System performing maintenance and construction work.  Robinsons job required a lot of physical exertion, including lifting, climbing, and pulling.  At the time of his injury, Robinson was leaning over to lift or pull a cast iron meter box out of the ground when he felt something pop in his right shoulder.  
 
On July 2, 2003, Robinson went to Exigent, an urgent care center, complaining of pain after pulling something in his neck and right arm while working the day before.  Dr. Thomas Maskell diagnosed Robinson as having a muscle strain, recommended medications, and allowed him to return to full work duties at Robinsons request.  Dr. Maskell instructed Robinson to follow-up if he experienced any problems.  At a follow-up visit to Exigent on July 23, 2003, Dr. Lynn Owens noted Robinson continued to complain of throbbing pain in his right shoulder and difficulty with movement.  Dr. Owens recommended different medications and the restriction of his work to light duty.    
On August 1, 2003, Dr. Maskell reported Robinson had been continuing to work full time, but his right shoulder still bothered him.  Dr. Maskell scheduled an MRI scan and restricted Robinson to light duty.  According to Dr. Maskells notes of August 11, 2003, Robinson had been sent home from light duty work by his employer.  The results of the MRI scan showed Robinson actually had a torn rotator cuff, not a pulled muscle as initially diagnosed, so Dr. Maskell referred Robinson to an orthopedist.    
Dr. Stephen Geary, an orthopedic surgeon, evaluated Robinson on August 18, 2003 and diagnosed him as having a full-thickness tear of the right dominant[2] rotator cuff, as well as some moderate degenerative changes of the AC joint[3] and labrum.  On August 28, 2003, Dr. Geary performed surgery on Robinson.  Robinson continued to experience pain after the surgery, and he began undergoing physical therapy.    
Because of his continuing pain, Robinson sought a second opinion and was sent to another orthopedic surgeon, Dr. Alan Posta, for an examination.  On November 26, 2003, Dr. Posta recommended additional physical therapy and pain management treatment.  Dr. Posta found Robinson had a loss of range of motion, pain with overhead motion, tenderness throughout the shoulder, and decreased rotator cuff strength.  Dr. Posta opined Robinson had chronic pain and was in need of pain management treatment and further physical therapy, but he was capable of light duty.  According to Robinson, there was, effectively, no work for him with his employer because he was told that there was no such thing as light duty at [his] job.      
On December 17, 2003, Dr. Geary noted Robinson continued to complain of pain, especially with overhead activity.  Nevertheless, Dr. Geary determined Robinson had reached maximum medical improvement (MMI) in regard to his right shoulder and released him from care, finding he had a 15% (fifteen percent) permanent and partial impairment of his right dominant upper extremity.  Dr. Geary remarked in his notes that he had not placed any permanent restrictions on Robinson.    
Robinson did not receive additional physical therapy past December 2003 despite repeated requests from his attorneys.  Robinson believed Dr. Gearys attitude towards him changed after he requested a second opinion.  Robinson was terminated from his job with the Greenville Water System in February 2004.    
Robinson suffered psychological distress from being unable to work and to resume his other normal activities.  Robinsons pre-existing Tourettes syndrome became worse due to the psychological stress he was under from his work injury and chronic pain.  Robinson went to his family physician, Dr. Danny Caddell, for treatment of his worsening symptoms.  On April 19, 2004, Dr. Caddell concluded Robinsons Tourettes syndrome was aggravated by his work injury of July 1, 2003.  The same day, Dr. Caddell also reported that Robinsons problem with his nerves [was] caused and/or aggravated by his work injury of July 1, 2003.  In May 2004, Dr. Caddell expressly determined Robinson was in need of pain management treatment for the injuries he received at work.    
In June 2004, Robinson was evaluated by a licensed clinical psychologist, Dr. C. David Tollison, who stated in his professional opinion that Robinson had suffered the exacerbation of a pre-existing psychological condition.  Specifically, Dr. Tollison opined that chronic pain has affected Robinsons psychological state, which, in turn, has generated a level of anxiety, stress, and depression that has created protracted muscular spasms, thus increasing the intensity of Robinsons pain and his perception of such.  Dr. Tollison recommended that Robinson be referred for specialty treatment in the two primary areas of impairment, that being residual pain and psychological symptoms.    
On May 25, 2004, Dr. George Bruce, an orthopedic surgeon, noted Robinson continued to complain of constant right arm and shoulder pain that limited his ability to raise his arm over his head or lift more than fifteen pounds.  Dr. Bruce stated to a reasonable degree of medical certainty . . . [Robinson suffered] a full-thickness tear of his rotator cuff . . . .  As he presents today, he has decreased range of motion and decreased strength of his right shoulder, and decreased right hand grip.  Dr. Bruce believed Robinson had aggravated pre-existing degenerative conditions in his right shoulder in the accident and stated Robinson now has a 27% physical impairment of the right upper extremity. 
 
Appellants, meanwhile, moved to terminate Robinsons disability payments.  Appellants admitted Robinson sustained a compensable injury to his right shoulder, but denied that he was entitled to additional treatment or that he had suffered a compensable injury to any other body part or system.  Robinson contended that he needed additional medical treatment and continued temporary compensation benefits due to the injury to his right shoulder and a resulting psychological injury.    
 
By order filed March 9, 2005, the Single Commissioner found Robinson had not reached MMI and the injuries to his right shoulder and his psyche were compensable.  The Single Commissioner ordered continuing medical treatment to include additional physical therapy, pain management treatment, and psychological counseling.    
The Single Commissioner specifically found:  (1) while Dr. Geary had opined that Robinson was able to return to work in mid-December 2003, Dr. Posta stated at the end of November 2003 that Robinson should continue light duty; (2) Dr. Posta recommended additional physical therapy and pain management treatment that has not yet been provided; (3) the employer is unable to provide [Robinson with] light duty work; (4) Robinson remains totally disabled from working because of his injuries, as he is still under light duty work restrictions and [the employer] is unable to provide work within these restrictions; (5) Robinson has developed emotional distress, including depression and anxiety, and increased symptoms of his Tourettes syndrome as a result of his continued right shoulder pain and his inability to work and function as he did before the accident; and (6) Robinson has sustained compensable injury to his psyche, including depression, anxiety and aggravation of his pre[-]existing Tourettes syndrome as a result of his injury by accident, his related physical injuries, and his ongoing pain and limitations.      
A unanimous Appellate Panel adopted the order of the Single Commissioner in its entirety on September 30, 2005, concluding the Findings of Fact and Rulings of Law were correct as stated therein.  By order filed March 1, 2006, the circuit court affirmed the order of the Appellate Panel, upholding the Commissions findings.  This appeal followed.
LAW/ANALYSIS
I.  MMI
On appeal, Appellants assert the only evidence in the record is that Robinson has reached MMI and that his benefits should be terminated.  They assert the Commission erred in awarding continuing benefits.  We disagree.
The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers Compensation Commission.  Under the APA, an appellate court may reverse or modify an administrative agencys ruling if the agencys findings, inferences, conclusions, or decisions are affected by an error of law or are clearly erroneous in view of the substantial evidence in the whole record.  S.C. Code Ann. § 1-23-380(A)(5)(d) & (e) (Supp. 2006). 
 
The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence.  Rodney v. Michelin Tire Corp., 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996).  Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion reached by the Commission.  Id. 
 
The Commission is the ultimate fact-finder in workers compensation cases and is not bound by the Single Commissioners findings of fact.  Brayboy v. Clark Heating Co., 306 S.C. 56, 409 S.E.2d 767 (1991) (citing S.C. Code Ann. § 42-17-50); see also Ross v. Am. Red Cross, 298 S.C. 490, 381 S.E.2d 728 (1989).  The final determination of witness credibility and the weight to be accorded evidence is reserved to the Commission.  Ross, 298 S.C. at 492, 381 S.E.2d at 730.  A court may not substitute its judgment for that of the Commission concerning the weight of the evidence on questions of fact.  S.C. Code Ann. § 1-23-380(A)(5) (Supp. 2006); see also Ellis v. Spartan Mills, 276 S.C. 216, 219, 277 S.E.2d 590, 591 (1981) (stating it is not the task of courts to weigh the evidence as found by the [C]ommission). 
 
The possibility of drawing two inconsistent conclusions from the evidence does not mean the Commissions decision is unsupported by substantial evidence.  Ellis, 276 S.C. at 218, 277 S.E.2d at 591.  Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the Commission are conclusive.  Tiller v. Natl Health Care Ctr., 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). 
 
MMI is a term used to indicate that a person has reached such a plateau that in the physicians opinion there is no further medical care or treatment which will lessen the degree of impairment.  OBanner v. Westinghouse Elec. Corp., 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct. App. 1995).  Even if an employee has reached MMI, further medical care or treatment may still be appropriate.  See Dodge v. Bruccoli, Clark, Layman, Inc., 334 S.C. 574, 581, 514 S.E.2d 593, 596-97 (Ct. App. 1999) (Although this medical care or treatment may not reduce the claimants degree of physical impairment, it may tend to lessen the period of disability. (citation omitted)).  Whether an employee has reached MMI is a factual determination that is left to the discretion of the Commission.  Gadson v. Mikasa Corp., 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct. App. 2006).
We agree with the circuit court that substantial evidence supports the Commissions finding that Robinson has not reached MMI and that he is entitled to additional benefits.  As the circuit court noted, although there was some evidence from Dr. Gearys notes that Robinson had reached MMI, at least as to his physical injury, there was conflicting evidence that Robinson had not.  Such conflicts should be resolved by the Commission and do not preclude a determination that the Commissions findings are supported by substantial evidence. 
 
In contrast to Dr. Gearys findings, Dr. Posta recommended additional physical therapy and pain management treatment for Robinson and restricted him to light duty on November 26, 2003.  In addition, Dr. Caddell continued to treat Robinsons shoulder pain and his worsening Tourettes syndrome.  In May 2004 Dr. Caddell specifically recommended additional treatment for Robinson.  There was also medical evidence from Dr. Tollison, a licensed clinical psychologist, that Robinson sustained an injury to his psyche as a result of his work accident and had continuing pain from his physical injuries.  As late as June 2004, Dr. Tollison recommended that Robinson be referred for specialty treatment for two areas of impairment, Robinsons residual pain and his psychological symptoms.    
Appellants argue Dr. Postas recommendation of additional physical therapy occurred prior to Dr. Gearys determination of MMI; therefore, no additional therapy is needed.  Dr. Posta recommended additional physical therapy and pain management treatment on November 26, 2003.  Just a few weeks later, on December 17, 2003, Dr. Geary ended Robinsons treatment when he concluded Robinson was at MMI as to his right shoulder.  The Commissions interpretation was that Dr. Posta was recommending a continuation of treatment, not an imminent cessation of treatment in December, and we find this interpretation reasonable in light of the evidence that Robinson continued to have both physical and psychological problems as a result of his work accident well into the following year.  Robinson testified he sought a second opinion from Dr. Posta because Dr. Geary was winding up his treatment even though he was still experiencing problems.  The Commission also relied on the medical records of Dr. Caddell, who recommended additional treatment in 2004.  Accordingly, we hold substantial evidence supports the Commissions findings in this regard.
II.  Psychological Injury
Appellants next contend the Commission erred in finding Robinson has sustained a compensable injury to his psyche as a result of his work accident.  They further contend even if the condition is compensable, it does not preclude a determination that Robinson has reached MMI.  We disagree.
The Commission determined Robinson has sustained compensable injury to his psyche, including depression, anxiety and aggravation of his pre[-]existing Tourettes syndrome as a result of his injury by accident, his related physical injuries, and his ongoing pain and limitations.  This finding was based on Robinsons testimony and the medical records of Dr. Caddell and Dr. Tollison. 
 
Our supreme court has held that [m]ental injuries are compensable if they are induced either by physical injury or by unusual or extraordinary conditions of employment.  Anderson v. Baptist Med. Ctr., 343 S.C. 487, 493, 541 S.E.2d 526, 528 (2001).  Aggravation of pre-existing psychiatric problems is compensable if that aggravation is caused by a work-related physical injury.  Id.  When deciding if causation has been established, the Commission has the discretion to weigh and consider both lay and expert evidence, including lay testimony regarding the employees health before and after the accident.  Tiller, 334 S.C. at 339-40, 513 S.E.2d at 846.
We agree with the circuit court that substantial evidence supports the Commissions finding that Robinson has sustained a compensable injury to his psyche.  As noted above, Dr. Tollison expressly determined Robinsons pre-existing psychological problems and Tourettes syndrome were exacerbated by his work injury.  Dr. Tollison stated Robinson reported being unable to sleep well because of his discomfort and that he had lost twenty pounds as constant pain left him with no appetite.  He noted Robinson has experienced frustration, stress, and depressive symptoms and has had a difficult time adjusting to the multiple lifestyle changes caused by his chronic pain and not being able to work and live as he did prior to the accident.  Dr. Tollison concluded Robinsons chronic pain had affected his psychological state.  

In April 2004 Dr. Caddell also opined that Robinsons Tourettes syndrome was aggravated by his work injury.  Dr. Caddell further stated Robinsons problem with his nerves [was] caused and/or aggravated by his work injury of July 1, 2003.  In May 2004 Dr. Caddell recommended pain management for Robinson.   
 
Moreover, Robinson himself testified that his continued pain and inability to function as he did before his injury had caused him emotional problems and increased his pre-existing problems with Tourettes syndrome.  He expressly stated his inability to return to work has almost made [him] go crazy.  Robinson, who had four children, stated he had worked since he was twelve years old and had been with his employer for five years and wanted to get better so he could return to work.  Robinsons employer reported no problems with Robinson prior to this accident for the five years he had been there.  Although Robinson acknowledged he did have some marital problems, he stated he had a normal marriage until this accident.  As the circuit court observed, Dr. Tollison specifically recognized the other stressors in Robinsons life, such as his pre-existing Tourettes syndrome and his marital situation, but still opined that Robinsons psychological condition was caused by his work injury.  Accordingly, we affirm the Commissions finding of a compensable psychological injury and its related findings regarding MMI.
CONCLUSION
Based on the foregoing, the order of the circuit court is
AFFIRMED.
HEARN, C.J., KITTREDGE, J., and CURETON, A.J., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  Robinson is right-handed.  
 
[3]  The AC joint refers to the acromioclavicular joint, i.e., the joint between the acromion (shoulder blade) and the clavicle (collarbone).  See generally Tabers Cyclopedic Dictionary 32, 398 (17th ed. 1993) (discussing the acromioclavicular joint and the clavicle, respectively).