**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Cynthia L. Aviles, Respondent,

v.

South Carolina Department of Employment and Workforce, and Accusweep Services, Inc., Defendants,

Of whom South Carolina Department of Employment and Workforce is the Appellant.

Appellate Case No. 2015-001458

———————

Appeal From The Administrative Law Court
Deborah Brooks Durden, Administrative Law Judge

———————

Unpublished Opinion No. 2017-UP-120
Heard February 8, 2017 – Filed March 15, 2017

———————

**REVERSED**

———————

E.B. "Trey" McLeod, III and Debra Sherman Tedeschi, both of the South Carolina Department of Employment and Workforce, of Columbia, for Appellant.

Christopher Shannon Leonard, of Kendrick & Leonard, P.C., of Columbia, for Respondent.

———————

**PER CURIAM:**  The South Carolina Department of Employment and Workforce (DEW) appeals an order of the administrative law court (ALC) in which the ALC awarded unemployment insurance (UI) benefits to Cynthia L. Aviles after determining the record contained no evidence to show she voluntarily quit her employment.  DEW argues the ALC erred in (1) reversing DEW's determination that Aviles was indefinitely disqualified from receiving UI benefits, which was based on DEW's factual finding that Aviles left her most recent job voluntarily and without good cause due to her incarceration, and (2) deciding Aviles was entitled to UI benefits when her separation from employment was a direct result of being incarcerated for over four months.  We reverse.

## FACTS/PROCEDURAL HISTORY

Aviles was employed as a street sweeper for Accusweep Services, Inc. (Accusweep) from August 2013 to January 2014.  On January 4, 2014, Aviles was arrested and incarcerated for armed robbery.  Accusweep did not hear from Aviles during her incarceration and had no knowledge of her whereabouts.  On January 6, 2014, Accusweep sent Aviles an Employee Separation Notice based on her failure to return to work and her failure to contact Accusweep.  Approximately four months later, the charges against Aviles were dismissed and she was released from jail.  Aviles contacted Accusweep after her release, but Accusweep had already replaced Aviles and did not have an open position for her.  Aviles filed a UI claim with DEW in August 2014 and was initially denied benefits.  Aviles' UI benefits case was subsequently reversed at each stage of review.[1]

---

[1] There are four layers of trial and appellate review before a UI benefits case reaches this court.  DEW's initial determination regarding UI benefits is made by a claims adjudicator.  3 S.C. Code Ann. Regs. 47-51(A) (2011).  A party aggrieved by the adjudicator's decision may appeal to DEW's Appeal Tribunal (Tribunal), which conducts a de novo hearing at which the parties may present testimony.  *Id.* at (A), (C).  The next level of appeal is to DEW's Appellate Panel, which decides the appeal based solely on the evidence in the record before the Tribunal.  3 S.C. Code Ann. Regs. 47-52(A), (B) (2011).  The Appellate Panel's decision may then be appealed to the ALC, which reviews the case in its appellate capacity.  S.C. Code Ann. § 41-35-750 (Supp. 2016); S.C. Code Ann. § 1-23-600(E) (Supp. 2016).  Finally, a party may appeal the ALC's decision to the court of appeals.  § 41-35-750; S.C. Code Ann. § 1-23-610(A)(1) (Supp. 2016).

## STANDARD OF REVIEW

The ALC reviews final agency decisions in its appellate capacity as prescribed in section 1-23-380 of the South Carolina Code (Supp. 2016). S.C. Code Ann. § 1-23-600(E); *see also Stubbs v. S.C. Dep't of Emp't & Workforce*, 407 S.C. 288, 292, 755 S.E.2d 114, 116 (Ct. App. 2014) (stating the ALC sits in its appellate capacity when hearing an appeal from a decision of DEW). The ALC "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact." § 1-23-380(5); *see also* § 41-35-750 ("[T]he findings of the department regarding facts, if supported by evidence and in the absence of fraud, must be conclusive and the jurisdiction of the [ALC] must be confined to questions of law."). Pursuant to section 1-23-380(5), the reviewing court may reverse or modify the agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

"It is well-settled that decisions of administrative agencies should be upheld on appeal [when] they are supported by substantial evidence." *Milliken & Co. v. S.C. Emp't Sec. Comm'n*, 321 S.C. 349, 350, 468 S.E.2d 638, 639 (1996). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 492, 541 S.E.2d 526, 528 (2001). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

## LAW/ANALYSIS

Pursuant to section 41-35-110(5) of the South Carolina Code (Supp. 2016), an unemployed and insured worker is eligible to receive benefits only if DEW finds she "has separated, through no fault of [her] own, from [her] most recent bona fide employer." Section 41-35-120(1) of the South Carolina Code (Supp.

2016)[2] states an insured worker is ineligible to receive benefits if the worker "left [work] voluntarily, without good cause."

"An employee may be charged with quitting a job by action or inaction with unavoidable ramifications." *Samuel v. S.C. Emp't Sec. Comm'n*, 285 S.C. 476, 477, 330 S.E.2d 300, 301 (1985). In *Samuel*, our supreme court considered whether an employee had voluntarily quit her job when she failed to seek a leave of absence after being notified by her employer that her sick leave had expired. *Id.* Our supreme court noted the employee understood the consequences of her failure to act but did nothing to save her job and, thus, had voluntarily quit through her own inaction. *Id.* at 478, 330 S.E.2d at 301. It stated, "Though not affirmatively quitting, it is clear [the employee's] own conduct caused her termination." *Id.* at 477–78, 330 S.E.2d at 301.

"The [Appellate Panel] has the authority to make its own findings of fact consistent with or inconsistent with those of the appeal tribunal." *Merck v. S.C. Emp't Sec. Comm'n*, 290 S.C. 459, 460, 351 S.E.2d 338, 339 (1986). "The fact that testimony is not contradicted directly does not render it undisputed. There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation." *Black v. Hodge*, 306 S.C. 196, 198, 410 S.E.2d 595, 596 (Ct. App. 1991) (citation omitted). This court defers to the judgment of the agency "on questions of witness credibility." *Milliken & Co.*, 321 S.C. at 350, 468 S.E.2d at 639.

In the instant case, the Appellate Panel found Aviles voluntarily left her employment without good cause, basing its determination on the fact that Aviles failed to contact Accusweep. In its order, the Appellate Panel discussed Aviles' testimony before the Tribunal that her cell phone was in police custody and she could not contact Accusweep without her cell phone. The Appellate Panel stated it did "not find credible [Aviles'] assertion that she had no means of contacting [Accusweep] to notify them of her circumstances."

Despite the fact that the Appellate Panel did not witness Aviles' testimony and the fact that Aviles' testimony was not contradicted, the Appellate Panel's finding is supported by substantial evidence because the Appellate Panel had the authority to make a credibility finding based on the "inherent probability" of Aviles' testimony. *See Black*, 306 S.C. at 198, 410 S.E.2d at 596 ("The fact that

---

[2] Section 41-35-120 was revised in 2015; however, we have cited the current version because none of the revisions are pertinent to this appeal.

testimony is not contradicted directly does not render it undisputed. There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation." (citation omitted)); *see also Lark*, 276 S.C. at 136, 276 S.E.2d at 307 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (quoting *Consolo*, 383 U.S. at 620)). Moreover, the Appellate Panel's finding is entitled to deference from this court. *See Milliken & Co.*, 321 S.C. at 350, 468 S.E.2d at 639 (stating this court defers to the judgment of the agency "on questions of witness credibility"); *see also* § 1-23-380(5) (stating the ALC "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact"); *Merck*, 290 S.C. at 460, 351 S.E.2d at 339 ("The [Appellate Panel] has the authority to make its own findings of fact consistent with or inconsistent with those of the appeal tribunal.").

Because we defer to the Appellate Panel's finding on Aviles' credibility, we find substantial evidence supported its determination that Aviles voluntarily quit her job. We acknowledge the fact that Aviles' failure to physically appear for her shift may have been outside of her control; however, Accusweep's reason for sending Aviles the separation notice was twofold: "failed to return, no contact." We find Aviles' failure to notify her employer of her whereabouts and her desire to remain employed was an "inaction with unavoidable ramifications," which amounted to a voluntary quit. *See Samuel*, 285 S.C. at 477, 330 S.E.2d at 301 ("An employee may be charged with quitting a job by action or inaction with unavoidable ramifications."); *id.* at 477–78, 330 S.E.2d at 301 (finding an employee voluntarily quit her job when she failed to contact her employer to seek a leave of absence after being notified by her employer that her sick leave had expired).

In its order, the ALC discounted the importance of Aviles' failure to contact Accusweep, stating, "[E]ven disbelieving that [Aviles] was unable to contact [Accusweep] from prison, a reasonable person could not conclude that [Aviles] voluntarily abandoned her job." We disagree with this assessment.[3] If Aviles had

---

[3] Many jurisdictions consider whether the employee contacted the employer during her incarceration for a crime she did not commit when determining whether the employee should receive UI benefits. *See, e.g., Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 206 (Iowa 2016) (discussing cases from different jurisdictions in which UI benefits were permitted for an employee who had been incarcerated when there was no criminal conviction or admission of guilt and the employer was

contacted Accusweep during her incarceration, she could have notified her employer of her whereabouts, explained her situation, expressed an interest in continuing to work for the company upon her release, and sought a leave of absence. Furthermore, if Aviles had given notice, Accusweep could have had other employees cover Aviles' shifts or could have hired a temporary employee, rather than hiring a permanent replacement for Aviles. We do not believe an employer should be expected to hold open a position for an employee without any indication of whether the employee plans to return. Accordingly, we find the Appellate Panel's determination that Aviles voluntarily quit her job without good cause based on her failure to contact Accusweep during her incarceration was not clearly erroneous and should not have been reversed by the ALC. *See* § 1-23-380(5) (stating a reviewing court may reverse or modify the agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"); *see also Milliken & Co.*, 321 S.C. at 350, 468 S.E.2d at 639 ("It is well-settled that decisions of administrative agencies should be upheld on appeal [when] they are

---

notified of the reason for the employee's absence and stating, "Where there are admissions or convictions of guilt, or where an employee has not notified an employer of his or her incarceration, a disqualification becomes more likely"); *see also Magma Copper Co., San Manuel Div. v. Ariz. Dep't of Econ. Sec.*, 625 P.2d 935, 936–37 (Ariz. Ct. App. 1981) (stating an absence occasioned by incarceration that results in discharge from employment does not necessarily disqualify the worker from receiving UI benefits and noting a regulation stating that a discharge due to incarceration is disqualifying when "[t]he claimant d[oes] not properly notify, or fail[s] to make a reasonable effort to properly notify[,] the employer of his absence"); *Parker v. Dep't of Labor & Emp't Sec.*, 440 So.2d 438, 438–39 (Fla. Dist. Ct. App. 1983) (finding an employee was entitled to receive UI benefits when there was nothing in the record to indicate the employee committed the offense with which he had been charged and he kept his employer advised of his status and of his interest in returning to work as soon as possible); *Schoennagel v. La. Office of Emp't Sec.*, 413 So.2d 652, 653–55 (La. Ct. App. 1982) (finding an employee who was incarcerated for fourteen days because of his inability to make bond did not voluntarily leave his employment because there was no evidence showing he had actually committed the act for which he was charged and "[h]e expressed his intention to remain as an employee by calling his employer the day he was incarcerated and again by calling the very day he was released from jail").

supported by substantial evidence.").  Accordingly, we reverse the decision of the ALC.

In light of the foregoing, we need not reach the merits of DEW's remaining issue.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when the resolution of a prior issue is dispositive).

**REVERSED.**

**GEATHERS and MCDONALD, JJ., and MOORE, A.J., concur.**