735 S.E.2d 246

Jennette CANTEEN, Appellant,

v.

McLEOD REGIONAL MEDICAL CENTER and Palmetto Hospital Trust Services, Ltd., Respondent.

Appellate Case No. 2010–156546.

No. 5047.

Court of Appeals of South Carolina.

Heard Sept. 10, 2012.
Decided Nov. 7, 2012.

Edward L. Graham, of Graham Law Firm, PA, of Florence, for Appellant.

Walter Hilton Barefoot, of Turner Padget Graham & Laney, PA, of Florence, and R. Hawthorne Barrett, of Turner Padget Graham & Laney, PA, of Columbia, for Respondent.

LOCKEMY, J.

Jennette Canteen appeals from the circuit court's order affirming the Workers' Compensation Commission's Appellate Panel's (Appellate Panel) finding that she did not suffer a brain injury. Canteen argues the circuit court erred by (1) failing to find Canteen suffered from an asymptomatic Chiari I Malformation prior to July 2, 2001; (2) failing to find Canteen's injury aggravated her previously asymptomatic Chiari I Malformation; (3) finding no medical doctor provided evidence Canteen suffered a physical brain injury and disregarding the medical doctors' evidence; (4) disregarding evidence of Canteen's physical brain damage from herself and three neuropsychologists; (5) finding Dr. Kenneth Kammer's testimony concerning brain damage was equivocal; (6) failing to affirm the

single commissioner's finding that evidence proved Canteen's physical brain damage was causally related to Canteen's work injury, (7) finding substantial evidence supported the Appellate Panel's decision; and (8) failing to affirm the single commissioner's award of lifetime compensation and lifetime medical care. We reverse and remand to the Appellate Panel.

## FACTS/PROCEDURAL BACKGROUND

Canteen was working as a nurse at McLeod Regional Medical Center (McLeod) when she fell in the operating room on July 2, 2001. As a result of the fall, Canteen claimed she injured her right knee, right leg, cervical spine, head, brain, right arm, and right wrist. Canteen also claimed she suffered from mental injuries, psychological problems, exacerbation of a Chiari I Malformation, hemiparesis following Chiari I Malformation surgery, and bladder incontinence.

Although Canteen returned to work after the fall, she claimed she was unable to perform all of her duties, leading to her resignation. Sometime after the accident, Canteen claimed she began having headaches and experienced a "clicking" sound when she moved her head. In February 2003, neurosurgeon Dr. Kenneth Kammer diagnosed Canteen with a Chiari I Malformation, a condition in which the "cerebellar tonsils protrude down through the foramen magnum into the cervical spinal canal." Dr. Kammer testified Canteen's fall exacerbated her previously asymptomatic Chiari I Malformation, making it symptomatic. However, evidence was also presented from two other doctors that disputed the Chiari I Malformation diagnosis. Drs. Samuel McCown and Byron Bailey reviewed Canteen's MRIs and testified they did not believe she suffered from a Chiari I Malformation. Dr. Kammer recommended decompression surgery on Canteen's brain, which he performed in July 2003. Following surgery, in February 2004, Canteen was evaluated by neurologist Dr. Gero Kragh who opined that Canteen had a Chiari I Malformation that was aggravated by her fall at work.

In July 2004, Canteen filed a Form 50 claiming she was totally and permanently disabled with physical brain damage; thus, she was entitled to lifetime compensation and medical care. According to Canteen, following surgery, she regained full range of motion in her neck. However, Canteen testified

she had post-operative paralysis in her right side that eventually improved, leaving her with residual weakness and numbness in her right hand and foot. Canteen also testified she has difficulty with fine motor skills and suffers from gait and balance problems. Additionally, Canteen testified she has cognitive difficulties, which affect her concentration, comprehension, problem solving, multi-tasking, and memory abilities. According to Canteen, she has difficulty reading, driving, and handling household chores and the activities of daily living. She also testified she has difficulty making eye contact and hears voices that are not present.

Dr. Kammer testified Canteen did not sustain any brain damage as a result of the surgery. Neuropsychologist Dr. Randy Waid also evaluated Canteen and opined that Canteen's fall "caused an asymptomatic Chiari Malformation to become symptomatic," and she suffered "physical injury to the brain." Dr. Waid opined that Canteen's symptoms were "a direct result of the fall that rendered her Chiari [M]alformation symptomatic." Additionally, psychologist Dr. Robert Brabham determined Canteen experienced a permanent physical injury to her brain when she fell at work. Dr. Brabham opined that most of Canteen's "noted inconsistencies" are "brain-injury related rather than from feigning or malingering, as might be questioned." Dr. Kragh found Canteen's "neurologic compromise [ ] resulted from an exacerbation of her pre-morbidly existent [Chiari I Malformation] and was a recognized risk factor in the decompression of such malformation."

McLeod admitted the injuries to Canteen's right knee and cervical spine; however, it denied Canteen had a Chiari I Malformation. On September 12, 2005, after a hearing, the single commissioner granted Canteen all of her requested relief and concluded Canteen suffered a brain injury. Specifically, the single commissioner determined Canteen's accident caused her pre-existing Chiari I Malformation to become symptomatic. The single commissioner found Canteen was totally and permanently disabled and determined she was entitled to lifetime compensation and care. McLeod appealed only the single commissioner's findings that Canteen suffered a brain injury and that the accident triggered her Chiari I Malformation symptoms. On June 26, 2006, the Appellate

Panel reversed the single commissioner's findings concerning Canteen's brain injury and remanded the case to the single commissioner for a determination of permanency to body parts other than Canteen's brain.

Canteen appealed the brain injury finding to the circuit court prior to the proceedings before the single commissioner regarding the remanded issues. McLeod filed a motion to dismiss based on lack of subject matter jurisdiction, arguing the appeal was interlocutory because the Appellate Panel had remanded the case to the single commissioner for further proceedings. *See Canteen v. McLeod Reg'l Med. Ctr.*, 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009) *overruled by Charlotte–Mecklenburg Hosp. Auth. v. S.C. Dep't of Health & Envtl. Control*, 387 S.C. 265, 266, 692 S.E.2d 894 (2010). On January 3, 2007, the circuit court granted McLeod's motion to dismiss, concluding the court did not have jurisdiction, and dismissed the appeal without prejudice. Thereafter, Canteen appealed the circuit court's order to this Court. In a July 15, 2009 opinion, this Court reversed the circuit court's order dismissing Canteen's appeal and remanded to the circuit court for a determination on Canteen's brain injury. *See id.* On remand, the circuit court affirmed the Appellate Panel, finding substantial evidence supported the Appellate Panel's determination that Canteen did not suffer a brain injury as a result of her work accident. The circuit court also determined substantial medical evidence existed that Canteen did not suffer from a Chiari I Malformation and, in the alternative, if Canteen did have a Chiari I Malformation, she did not suffer brain damage as a result of the accident. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the Commission. S.C.Code Ann. § 1–23–380 (Supp.2011); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the substantial evidence standard of review, this court may not "substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Stone v. Traylor Bros.*, 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004). "Substantial evidence is not a mere scintilla of evidence, nor

the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusions the administrative agency reached in order to justify its actions." *Broughton v. S. of the Border*, 336 S.C. 488, 495, 520 S.E.2d 634, 637 (Ct.App.1999). In workers' compensation cases, the Appellate Panel is the ultimate fact finder. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). The Appellate Panel is reserved the task of assessing the credibility of the witnesses and the weight to be accorded evidence. *Id.*

## LAW/ANALYSIS

### I.  Chiari I Malformation

■ Canteen argues the circuit court erred in failing to find (1) she suffered from a preexisting Chiari I Malformation and (2) her fall at work aggravated her previously asymptomatic Chiari I Malformation.

The single commissioner determined Canteen had an asymptomatic Chiari I Malformation, and her fall in 2001 triggered her Chiari I Malformation symptoms. The single commissioner noted Canteen suffered additional symptoms after surgery and found she had physical brain damage. Subsequently, the Appellate Panel, in its order, noted the existence of a Chiari I Malformation was an issue on appeal. However, the Appellate Panel did not make a specific finding regarding the existence of a Chiari I Malformation. Instead, the Appellate Panel determined only that the evidence did not support a finding that Canteen suffered a brain injury. The Appellate Panel made no reference to Canteen's alleged Chiari I Malformation in its findings of fact.

Canteen argues the Appellate Panel's failure to expressly reverse the single commissioner's determination that she suffered from a Chiari I Malformation was an affirmation of the single commissioner's finding by implication. McLeod maintains the Appellant Panel's use of the term "brain injury" included the specific condition of a Chiari I Malformation. We find the Appellate Panel's order is unclear whether in reversing the single commissioner's finding that Canteen suffered a brain injury, the Appellate Panel also reversed the single

commissioner's findings that Canteen suffered from a Chiari I Malformation.

On appeal, the circuit court was charged with determining whether substantial evidence supported the Appellate Panel's findings of fact or whether an error of law affected its order. *See Stone v. Traylor Bros.*, 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004). However, the circuit court improperly weighed the evidence and made its own factual determinations as to whether Canteen suffered from a pre-existing Chiari I Malformation and if her fall aggravated that Chiari I Malformation. Accordingly, we reverse the circuit court and remand to the Appellate Panel to determine whether Canteen suffered from a Chiari I Malformation and, if so, whether that Chiari I Malformation was aggravated by her fall.

## II. Evidence of Brain Injury

■ Canteen argues the circuit court erred in failing to find the Appellate Panel erred in (1) finding "no medical doctor provided evidence [Canteen] suffered a physical brain injury" and (2) disregarding evidence from Canteen and three neuropsychologists regarding Canteen's brain damage.

The Appellate Panel found "[t]he greater weight of the evidence does not support a finding that [Canteen] suffered a brain injury," and it noted that "[n]o medical doctor provided evidence [Canteen] suffered a physical brain injury." The circuit court determined Dr. Kammer's testimony, which was that Canteen did not sustain any brain damage as a result of the surgery, constituted substantial evidence to support the Appellate Panel's finding of no brain injury. The circuit court did not find, as the Appellate Panel did, that there was *no* evidence of brain injury. Rather, the circuit court noted it was within the Appellate Panel's authority to accept the testimony of Dr. Kammer over the testimony of Drs. Kragh, Waid, and Brabham.

■■ This court's review is limited to determining whether the Appellate Panel's decision is unsupported by substantial evidence or controlled by an error of law. *Corbin v. Kohler Co.*, 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002). We find the Appellate Panel's order is insufficient to enable a meaningful review. The findings of fact made by the Appel-

late Panel must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 531, 593 S.E.2d 491, 497 (Ct.App.2004). Pursuant to the APA,

A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

S.C.Code Ann. § 1–23–350 (2005).

Here, the Appellate Panel failed to detail any of the evidence presented to the Commission. The Appellate Panel's findings simply indicate it rejected Canteen's brain injury claim because no evidence supported a finding that she suffered any brain damage. The record, however, contains conflicting evidence on this issue. In light of the various facts and issues presented by this case, the Appellate Panel's findings are insufficient to permit this court to ascertain whether evidence supported the Appellate Panel's findings and whether the law was correctly applied.[1] Accordingly, we remand to the Appellate Panel to weigh the evidence and determine whether Canteen suffered a brain injury.

### III. "Equivocal" Testimony

Canteen argues the circuit court erred in failing to find the Appellate Panel erred in finding Dr. Kammer's testimony regarding brain damage was "equivocal."

Regarding Canteen's brain injury claim, the Appellate Panel determined: "The greater weight of the evidence does not support a finding that [Canteen] suffered a brain injury. Dr. Kammer's testimony from the hearing is equivocal." The Appellate Panel failed to cite any evidence to support its "equivocal" finding. Canteen argues the single commissioner

---

1. Because the Appellate Panel's order was insufficient, we need not address whether substantial evidence supports the Appellate Panel's findings. *See Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

correctly believed Dr. Kammer's testimony that she suffered from a pre-existing Chiari I Malformation that was aggravated by her fall, but disregarded Dr. Kammer's testimony that she did not suffer brain damage as a result of decompression surgery. Canteen maintains the Appellate Panel erred in rejecting Dr. Kammer's testimony as "equivocal" when his testimony was neither uncertain nor subject to multiple interpretations.

The Appellate Panel failed to sufficiently support its "equivocal" finding in its order, and therefore, we instruct the Appellate Panel to cite evidence supporting its position on remand.

## IV. Causal Relationship

Canteen argues the circuit court erred in failing to affirm the single commissioner's finding that evidence proved Canteen's brain damage was causally related to her work injury.

Regarding Canteen's brain injury claim, the Appellate Panel determined: "The greater weight of medical evidence does not show a causal relationship." It is unclear whether the Appellate Panel found there was no causal relationship between the fall and Canteen's alleged brain injury, or between the decompression surgery and Canteen's alleged brain injury. On remand, the Appellate Panel should clarify its finding with supporting evidence.

## V. Lifetime Compensation and Medical Care

Canteen argues the circuit court erred in failing to affirm the single commissioner's award of lifetime compensation and lifetime medical care. Based upon our decision to remand to the Appellate Panel for reconsideration, we need not address this issue. *See Futch,* 335 S.C. at 613, 518 S.E.2d at 598.

## CONCLUSION

For the foregoing reasons, the decision of the Appellate Panel is

**REVERSED AND REMANDED.**

SHORT and KONDUROS, JJ., concur.