# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Lamar Clark, Appellant,

v.

Philips Electronics/Shakespeare, Employer, and
Gallagher Bassett Services, Carrier, Respondents.

Appellate Case No. 2018-001197

─────────────────

Appeal From The Worker's Compensation Commission

─────────────────

Opinion No. 5809
Submitted February 1, 2021 – Filed March 10, 2021
Withdrawn, Substituted, and Refiled April 21, 2021

─────────────────

## REVERSED AND REMANDED

─────────────────

William B. Salley, Jr., of Salley Law Firm, P.A., of
Lexington, for Appellant.

Brooke Ann Payne, of Payne Law Group, LLC, of Mt.
Pleasant, for Respondents.

─────────────────

**HILL, J.:** Lamar Clark was hurt in July 2011 while working for Philips Electronics
(Philips). Philips admitted the injury, and Clark continued working for them another
six months. An October 2011 MRI of Clark's back revealed a herniated disc at
L5-S1. He began having "new onset radicular pain down to the buttocks." Dr.
Daniel Sheehan diagnosed Clark with lumbar radiculopathy, also called sciatica, a
condition often caused when a herniated disc pinches a lumbar spinal nerve and
radiates pain to the legs and other lower extremities. A conservative course of
treatment, including pain medication and physical therapy, was prescribed. Dr.

Thomas Holbrook began treating Clark in February 2012 and confirmed Clark "has lumbar radiculopathy on the left, secondary to a herniated disc on the left at L5-S1." Dr. Holbrook performed a microdiscectomy (a general anesthesia surgery to remove parts of a herniated disc to relieve pressure on the affected nerve). This relieved Clark's pain but only temporarily. Dr. Holbrook referred Clark to Dr. Steven Storick for pain management. Dr. Holbrook ordered another MRI, which showed a herniated disc at the left L4-5 with nerve root compression. Clark underwent a second miscrodiscectomy in September 2013. Again, the surgery appeared to help with Clark's pain but did not stop it. Clark continued with physical therapy and pain medications. In July 2015, at Dr. Storick's urging, Clark underwent a radiofrequency rhizotomy (a procedure designed to relieve chronic pain by destroying affected nerves). This procedure, along with prescribed painkillers, provided Clark some relief.

Over the years since his injury, Clark's medical providers have also addressed his mental health, attempting to combat the depression and anxiety caused by his persistent pain. Dr. Storick contemplates Clark may benefit from a spinal cord stimulator but does not recommend the treatment until Clark's depression and other aspects of his mental health have improved.

Dr. Robert Brabham, a psychologist and vocational rehabilitation expert with over fifty years' experience, concluded Clark was totally and permanently disabled. Jan Westmoreland, M.Ed., whom Philips engaged to evaluate Clark's ability to work, found Clark's medical records disclosed he could work at sedentary or light duty jobs. She listed several suitable positions available in the market, including cashier, attendance monitor, and movie ticket taker. When Westmoreland later learned Clark had completed a second year of college, she amended her report to state Clark could find work in IT support, computer programming, or as a security guard.

At the hearing before the Single Commissioner, Clark sought an award of permanent and total disability, alleging injuries to his back, left leg, left hip, and left foot, as well as psychological overlay. *See* S.C. Code Ann. § 42-9-10 (2015). He alternatively claimed he was totally and permanently disabled because he had lost more than fifty percent of the use of his back. *See* S.C. Code Ann. § 42-9-30(21) (2015).

A month before the hearing, it became known that Clark had claimed a back injury in 2006 while working for Tile Depot in Florida, and he had filed for worker's compensation and unsuccessfully sought social security disability income (SSDI) in 2008 and 2009 related to this injury. Clark had not disclosed this to Philips, who highlighted at the hearing that Clark claimed extensive physical limitations and pain

symptoms in his SSDI paperwork and that he had sought mental health treatment.  It was also discovered Clark had presented to a local hospital several months before the 2011 injury complaining of back pain.

The Single Commissioner ruled Clark was permanently and totally disabled pursuant to § 42-9-10, having proven injury to more than one body part (his back and legs) that destroyed his earning capacity.  The Single Commissioner also found Clark totally and permanently disabled due to loss of use of fifty percent of his back pursuant to § 42-9-30(21).  The Single Commissioner ruled Clark reached maximum medical improvement (MMI) on May 25, 2016, and Philips would be responsible for Clark's future medical and psychological care related to the injuries from the 2011 accident.  *See* S.C. Code Ann. § 42-15-60 (2015).

Philips appealed to the Appellate Panel. It reversed, finding Clark was not permanently and totally disabled, suffered no psychological injury, had reached MMI on July 23, 2014, and sustained a twenty percent permanent partial disability to his back, entitling him to benefits of $14,477.40.  The Panel, however, ordered Clark to reimburse Philips $33,539.31, the net credit owed to Philips for the temporary total benefits it had paid Clark after the July 23, 2014 MMI date.

Clark now appeals.  He claims the Panel's order is not supported by substantial evidence, and several of its factual findings are clearly erroneous.  For the reasons that follow, we agree with Clark and reverse and remand.

## I.  STANDARD OF REVIEW

### A. The Substantial Evidence Standard

We must affirm the factual findings of the Panel if they are supported by substantial evidence.  S.C. Code Ann. § 1-23-380(5) (2005 & Supp. 2020); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981).  Like any other finder of fact, the Panel may not rest its findings on speculation or guesswork. *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999) ("Workers' compensation awards must not be based on surmise, conjecture or speculation.").  We may reverse the Panel's decision if its findings are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," resulting in prejudice to Clark's substantial rights.  § 1-23-380(5)(e).  The Panel must anchor its ruling on evidence substantial enough to provide a reasonable basis for its findings. *Hutson v. S.C. State Ports Auth.*, 399 S.C. 381, 387, 732 S.E.2d 500, 503 (2012).

### B. Credibility Determination

The Panel concluded Clark's lack of credibility "undermined the medical opinions and treatment received . . . as the opinion and conclusions of [Clark's] providers were based upon self-serving assertions of the claimant." The order noted Clark's "lack of truthfulness" was "an impediment to supporting the Single Commissioner's decision."

The Panel was entitled to conclude Clark's credibility crumbled when it was learned he had not disclosed his 2006 back injury. We are also mindful that factual findings based on credibility calls can, and often do, amount to substantial evidence that requires us to affirm. But a credibility finding has no force independent of context—deciding a party is not credible does not make all of the party's other evidence incredible. Instead, the trier of fact must weigh and measure each piece of evidence. The Panel, bound as it is to make findings based on substantial evidence, "must explain how the credibility determination is important to making the particular factual finding." *Crane v. Raber's Disc. Tire Rack*, 429 S.C. 636, 647, 842 S.E.2d 349, 354 (2020). The lesson of *Crane* is that the Panel may not base a factual finding on a credibility determination without explaining both the basis of the credibility determination and how the determination rationally affects the disputed fact. An unexplained credibility determination or an unexplained use of a credibility finding means the factfinder's approach was arbitrary rather than rational.

## II. ANALYSIS

### A. Section 42-9-10 Disability

Clark seeks permanent and total disability under § 42-9-10 on the theory that he had injured a body part scheduled by § 42-9-30 as well as another body part and experienced a loss of earning capacity. *See Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 105–06, 580 S.E.2d 100, 102–03 (2003).

#### 1. Injury to More Than One Body Part

The Panel found Clark had a twenty percent "impairment to his back, taking into account any affects to his legs." Despite acknowledging Clark had injured his back and legs, the Panel proceeded to deny Clark permanent and total disability under section 42-9-10, reasoning he only injured one body part (his back) and had no lost earning capacity. This was clear error. There is no substantial basis in the record permitting the Panel to find Clark only injured one body part. The Panel gave the opinions of Clark's authorized treating physicians, Dr. Holbrook and Dr. Storick, the greatest weight; they both concluded Clark's injury to his back had affected and

impaired at least one of his legs. *See Dent v. East Richland Cty. Pub. Serv. Dist.*, 423 S.C. 193, 201–03, 813 S.E.2d 886, 890–91 (Ct. App. 2018).

Although the Panel declared Clark's woeful credibility befouled his entire medical record, it still agreed with Dr. Holbrook and Dr. Storick that Clark had suffered a twenty percent whole person impairment. Philips contends the Panel rightly treated all of the medical evidence as suspect because Clark did not disclose his 2006 injury. But Dr. Storick deflated this theory when he testified that learning of the 2006 injury did not change his opinion that the 2011 injury caused Clark's injuries. Philips could have offered contrary evidence; without any, the Panel had no basis to discount the objective medical evidence, and *Crane* tells us a vague nod to credibility cannot close the gap. Clark's lack of candor did not corrupt the credibility of his MRI results or the physical examinations of his treating physicians. Commissioner Taylor, the Single Commissioner, understood this. She deemed Clark "not credible at all," yet still fairly and impartially weighed the medical evidence. The Panel concluded the doctors' opinions were based upon "self-serving assertions of the claimant," but no doctor has said this. What people say when seeking medical help is usually self-serving and sometimes unreliable. Doctors are trained to detect such things, and we are confident that if the doctors believed they were duped into their opinions they would have said so.

The Panel's absolutist treatment of Clark's credibility in effect adopts the Latin maxim, well known to lawyers and a stalwart of closing arguments, which translates as "false in one, false in all." The maxim was discredited by *State v. Littlejohn*, 33 S.C. 599, 11 S.E. 638 (1890), and as far as we can tell, last appeared in a reported South Carolina case almost a hundred years ago as an aside in the infamous Upstate moonshine murder saga of *State v. Pittman*, 137 S.C. 75, 134 S.E. 514 (1926). Wigmore denounced the maxim as "primitive psychology" that "is in itself worthless . . . because in one form, it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life." 3A Wigmore *Evidence* §1008 at 982 (Chadbourn rev. 1970); *see also Virginia Ry. Co. v. Armentrout*, 166 F.2d 400, 405 (4th Cir. 1948) (noting the "harsh" maxim "has little or no place in modern jurisprudence"). Dubious and archaic as the saying may be, we are not aware of any instance where it has been used to disregard not just a party's testimony but their entire array of proof.

We therefore reverse the impairment rating and the finding that Clark injured only one body part and remand to the Panel for further findings. On remand, the Panel shall also revisit its impairment rating of Clark's back and explain why the twenty percent whole person rating does not translate to a higher rating for Clark's back alone.

2. Lost Earning Capacity

We agree with Clark that the Panel's finding that he has not lost earning capacity lacks substantial evidence. The finding—which appears in the "Conclusions of Law" section—floats on air, unsupported by any visible explanation or evidence. The "Findings of Fact" do not discuss either Dr. Brabham's or Ms. Westmoreland's reports, so we have no way of knowing what the Panel used to find Clark's earning capacity was intact. If it was Ms. Westmoreland's report, it would seem the Panel would have to explain why, unlike Dr. Brabham, Ms. Westmoreland chose not to take into account Clark's mental health diagnoses in concluding Clark could return to work. Dr. Brabham concluded Clark's depression and anxiety so affected his concentration and attention that he could not find work in the stable job market. Ms. Westmoreland's report "assumes" Clark can work twenty to forty hours per week. We reverse the Panel's conclusion that Clark has not lost earning capacity and remand for a de novo hearing resulting in conclusions of law supported by findings of fact.

B. Psychological Overlay

The Panel ruled Clark had "pre-existing psychological issues," and had not proven his 2011 injury at Philips aggravated them. *See* S.C. Code Ann. § 42-9-35 (2015). The Panel concluded his "current psychological condition, if any, is unrelated to his work injury."

The Panel pointed to Clark's response of "Yes" on one of his SSDI applications to a question asking whether he had been "seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?" Yet, Clark replied, "No," to the same question on his other SSDI application, and in neither did he state he was seeking benefits for a psychological injury. There is no evidence of any pre-existing mental health diagnosis before his 2011 injury. The way the SSDI question is worded does not prove a pre-existing treatment or diagnosis. Nor does it provide any basis to identify the type, nature, or degree of the supposed pre-existing condition.

On the other hand, the objective medical evidence of the existence, causation, and degree of Clark's depression and anxiety is uncontradicted. The record details the chronic pain, sleeplessness, and sense of helplessness and hopelessness Clark has experienced because of his 2011 injury. He has been examined or treated by at least ten medical doctors, several of whom are mental-health experts. Not one of them suggests Clark is malingering or faking. The Panel's conclusion that his concealment of a supposed pre-existing condition undermines this objective medical evidence is

another misuse of the credibility metric.  We therefore reverse the Panel's finding that Clark suffered no psychological overlay and remand to the Panel for a de novo hearing.

### C. Date of MMI

The Panel calculated Clark reached MMI on July 23, 2014.  No party pushed this date; Philips argued the correct MMI date was August 27, 2015.  The Panel drew the date from a form Dr. Holbrook had filled out, but he had handed Clark off to Dr. Storick, who testified Clark reached MMI on August 27, 2015.  Because the Panel did not explain how it resolved the clashing MMI evidence, we vacate and remand this finding to solve the mystery.  *See Canteen v. McLeod Reg'l Med. Ctr.*, 400 S.C. 551, 558–59, 735 S.E.2d 246, 250 (Ct. App. 2012) (remanding case where an Appellate Panel failed to make sufficient findings on issue where evidence conflicted: "The findings of fact made by the Appellate Panel must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings."); *Able Commc'ns, Inc. v. S.C. Pub. Serv. Comm'n*, 290 S.C. 409, 411, 351 S.E.2d 151, 152 (1986) ("Where material facts are in dispute, the administrative body must make specific, express findings of fact.").

## III. CONCLUSION

We reverse the Panel's decision and remand for a new hearing and findings as to Clark's § 42-9-10 claim for total and permanent disability based on injury to multiple body parts and loss of earning capacity, psychological overlay, date of MMI, and, if appropriate, future medical care and costs.  We decide this case without oral argument pursuant to Rule 215, SCACR.

**REVERSED AND REMANDED.**

**WILLIAMS and THOMAS, JJ., concur.**